George W. FREY, Plaintiff-Appellant,

v.

Otis BOWEN, Secretary of the Department of Health and Human Services, Defendant-Appellee.

No. 84–2530.

United States Court of Appeals, Tenth Circuit.

April 10, 1987.

Michael E. Bulson, Utah Legal Services (Stephen W. Farr of Farr, Kaufman & Hamilton, on the briefs), Ogden, Utah, for plaintiff-appellant.

Deana Rosemarie Ertl-Brackett (Brent D. Ward, U.S. Atty., and Gregory C. Diamond, Asst. U.S. Atty., on the brief), Salt Lake City, Utah, for defendant-appellee.

Before LOGAN, TIMBERS *, and MOORE, Circuit Judges.

LOGAN, Circuit Judge.

This is an appeal by George W. Frey from an order of the district court affirming the decision of the Secretary of Health and Human Services, denying his application for social security disability benefits.

Frey first applied for social security disability benefits July 29, 1980, claiming disability as a result of degenerative arthritis and disc problems causing severe and chronic pain in his back and neck, degenerative arthritis causing permanent disability and pain in his right elbow and hand, and a fall and subsequent surgery, aggravated by degenerative arthritis, causing permanent disability and pain in his right knee.

Frey was born in 1930 and has a twelfth-grade education. During the fifteen years before 1980, he worked in truck and automobile sales and repair, and in maintenance and customer service in the home construction industry. He has not worked since February 1980. Evidence from two treating doctors supported Frey's claim for disability benefits. Frey has approximately twenty-seven percent permanent disability in his right knee and right elbow, as rated by the state workers' compensation board.

When Frey's application for disability benefits was initially denied, a hearing was held at his request before an administrative law judge (ALJ), who determined that Frey had severe disabilities preventing him from engaging in his previous work. The ALJ determined, however, that Frey retained the residual functional capacity to perform sedentary work and therefore was not disabled. A second hearing before another ALJ followed after the Appeals Council remanded for further development of the record. The Appeals Council remanded with specific directions that the ALJ obtain an additional consultative physician's report to determine Frey's residual functional capacity, and vocational expert testimony to determine whether Frey's previously acquired employment skills would be readily transferable to a significant range of skilled or semiskilled work within his residual functional capacity. The Appeals Council also directed that the ALJ make specific findings about the credibility of Frey's allegations of pain, taking into account his use of medication, daily activities, pertinent medical findings and opinions, and the ALJ's own observations of Frey.

Rejecting the testimony and reports of Frey's treating physicians in favor of the report of the Secretary's consultant physician, and relying on the testimony of a vocational expert, the ALJ again determined that Frey was not disabled. The Appeals Council adopted the recommended decision. The district court affirmed and later, at the direction of this court, entered a memorandum opinion and judgment setting forth specifically those facts developed in the administrative record that it deemed supportive of the agency decision. The present appeal followed.

The district court judge made extensive and careful findings of fact, twenty-three in all, with which we find ourselves largely in agreement. However, these facts do not constitute substantial evidence from which

* The Honorable William H. Timbers, Senior United States Circuit Judge for the Second Circuit, sitting by designation.

the ALJ could properly conclude under the law and regulations that Frey was not disabled. In reviewing this decision it is accepted doctrine that the ALJ's determination of disability will be affirmed if it is supported by substantial evidence, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Turner v. Heckler,* 754 F.2d 326, 328 (10th Cir.1985) (quoting *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)).

> "This oft-cited language is not a talismanic formula for adjudication; the determination is not merely a quantitative exercise. Evidence is not substantial 'if it is overwhelmed by other evidence—particularly certain types of evidence (e.g., that offered by treating physicians) or if it really constitutes not evidence but mere conclusion.' "

*Knipe v. Heckler,* 755 F.2d 141, 145 (10th Cir.1985) (quoting *Kent v. Schweiker,* 710 F.2d 110, 114 (3d Cir.1983)).

■ Failure to apply the correct legal standard is also grounds for reversal. *Byron v. Heckler,* 742 F.2d 1232, 1235 (10th Cir.1984). There are specific rules of law that must be followed in deciding whether evidence is substantial in these disability cases. The failure of the ALJ and the Appeals Council to follow certain of these rules in this case is reversible error.

The ALJ found that Frey was capable of performing a full range of sedentary work and therefore conclusively applied the Secretary's Medical-Vocational Guidelines ("the grids") to determine that Frey was not disabled. On appeal, Frey asserts that the ALJ erred in applying the grids at all, because the initial determination that Frey was able to perform a full range of sedentary work existing in the national economy was erroneous. Frey contends that determination was erroneous because the ALJ failed to apply the correct legal standard with respect to (1) the weight to be accorded treating physician testimony, and (2) the assessment of Frey's complaints of pain. Frey also asserts that, even if the grids were applicable, the testimony of the vocational expert failed to establish that Frey's skills were transferable. Because we agree with all of these contentions, we reverse.

## I

■ The claimant bears the burden of proving a disability within the meaning of the Social Security Act. 42 U.S.C. § 423(d)(5). However, once a showing is made of disability preventing the claimant from engaging in prior work activity, the burden shifts to the Secretary to show "that the claimant retains the capacity to perform an alternative work activity and that this specific type of job exists in the national economy." *Channel v. Heckler,* 747 F.2d 577, 579 (10th Cir.1984). If the Secretary does not meet this burden, the claimant is disabled for purposes of award of disability benefits.

In many cases the Secretary can meet this burden by relying on the Medical Vocational Guidelines, "the grids," 20 C.F.R. § 404, Subpt. P, App. 2. The grids consider a claimant's residual functional capacity (RFC) to perform work (e.g., sedentary, light, medium or heavy) in relation to age, education, and work experience. A series of rules then set forth presumptions of disability or no disability, depending upon whether there are significant numbers of jobs in the national economy that a claimant with that particular configuration of characteristics can perform. 20 C.F.R. § 404, Subpt. P, App. 2 § 200.00(a); *Channel,* 747 F.2d at 578–79. When the claimant's individual characteristics as found by the ALJ coincide with one of the specific rules, that rule "directs a conclusion as to whether the individual is or is not disabled." *Id.*

■ Under the Secretary's own regulations, however, "the grids may not be applied conclusively in a given case unless the claimant's characteristics precisely match the criteria of a particular rule." *Teter v. Heckler,* 775 F.2d 1104, 1105 (10th Cir.1985) (quoting *Turner,* 754 F.2d at 328; *Channel,* 747 F.2d at 579). To be placed at a particular level of residual functional capacity, "a claimant must be able to perform the *full range* of such work on a daily

basis." *Channel*, 747 F.2d at 579 (emphasis in original). Moreover, since the grids take into account only exertional or strength impairments, they "cannot be used when a nonexertional impairment, such as pain, limits a claimant's ability to perform the full range of work in a particular RFC." *Teter*, 775 F.2d at 1105; 20 C.F.R. § 404, Subpt. P, App. 2 § 200.00(e). Limitations in such things as pushing, pulling, gripping, and bending may pose both nonexertional (manipulative, postural) and exertional (strength) limitations. *Channel*, 747 F.2d at 580 n. 5.

When an individual suffers from both exertional and nonexertional impairments, the Secretary's regulations mandate that the grids be applied first, to determine whether the claimant is disabled by reason of the exertional impairments alone. 20 C.F.R. § 404, Subpt. P, App. 2, § 200.-00(e)(2). If the claimant is not so disabled, the ALJ must then make a second individualized determination using the grids only as "a framework for consideration of how much the individual's work capability is further diminished in terms of any types of jobs that would be contraindicated by the nonexertional limitations." *Id.; Teter*, 775 F.2d at 1105.

In this case, the ALJ turned to the grids based on a finding that Frey retained the residual functional capacity to perform a full range of sedentary work. To make this finding and conclusively apply the grids to determine that Frey was not disabled, the ALJ specifically rejected the testimony and reports of Frey's treating physicians and Frey's own testimony as to limitations on his ability to perform a full range of sedentary work and his disabling pain. It is this finding, based on rejection of treating physician testimony and Frey's complaints of pain, that Frey challenges as legal error.

### A

The ALJ first rejected treating physician testimony in favor of consultant physician testimony, stating that

"[t]he claimant's credibility as to the degree of his discomfort was questioned by a board certified orthopedic surgeon [the Secretary's consultant physician, Dr. Gabbert]. This opinion was challenged by family specialist Dr. Warden.... Dr. Gabbert as consultant has no interest in the outcome. The family doctor naturally advocates his patient's cause."

R. I, 33.

The well-established rule in this circuit is that the Secretary must give substantial weight to the testimony of a claimant's treating physician, unless good cause is shown to the contrary. *Turner*, 754 F.2d at 329. Specifically, "the reports of physicians who have treated a patient over a period of time or who are consulted for purposes of treatment are given greater weight than are reports of physicians employed and paid by the government for the purpose of defending against a disability claim." *Id.* (quoting *Broadbent v. Harris*, 698 F.2d 407, 412 (10th Cir.1983)). We have suggested that a treating physician's opinion might be rejected if it is brief, conclusory, and unsupported by medical evidence, *Allison v. Heckler*, 711 F.2d 145, 148 (10th Cir.1983), but we have emphasized that "[i]f the opinion of the claimant's physician is to be disregarded, specific, legitimate reasons for this action must be set forth." *Byron*, 742 F.2d at 1235.

Frey's treating physician, Dr. David Warden, a board-certified family practitioner, testified at length in two administrative hearings based on at least three complete physical examinations and continuing treatment of Frey since 1981. He testified that his diagnosis of lumbar spine problems causing decreased motion and disabling pain was substantiated by examination findings of decreased kneejerk reflex and muscle strength, that chronic swelling and instability of the right knee were noticeable on examination, that x-rays substantiated degenerative arthritic changes in the cervical spine and right knee, and that decreased muscle mass in the right forearm, established by comparative measurement, indicated chronic right elbow pain and disability.

Based on his own examination and on tests performed by Dr. L.W. Johns, Frey's

treating chiropractor, Warden testified that Frey could not perform work requiring mechanical use of his right hand, and could not sit for longer than fifteen minutes without pain. Dr. Warden also testified that Frey could not take anti-inflammatory and antiarthritic medications because of his gastrointestinal problems, and that such medications are contraindicated by an irritated stomach. Dr. Warden offered his conclusion, based on his examinations and the reports of other treating physicians, that Frey's condition was progressive and degenerative, and that Frey was totally disabled.

Dr. L.W. Johns, a chiropractor, first treated Frey in 1966. In a 1980 report, Dr. Johns found continued degenerative arthritis in Frey's right knee, and a continuing loss of ability to grip and lift with his right arm and hand, as indicated by dynameter measurements. Frey had reported to Dr. Johns in February 1980 pain so severe that he was unable to care for himself. He responded sufficiently to chiropractic treatment and mild exercises to care for his own basic needs. In a 1982 report, Dr. Johns stated that 1982 x-rays showed progressive degenerative changes and spurring in the lumbar spine that would produce increased pain; anti-inflammatory and painkilling drugs were contraindicated because of Frey's reaction to them.

A 1980 report from the first doctor to examine Frey at the request of the Secretary, Dr. Gary O. Christiansen, found that Frey had significant disease in his right knee. Dr. Christiansen at that time did not find "much in the way of objective findings" reflecting Frey's back pain, but concluded that "[o]bjective findings in low back pain are difficult to obtain in view of legitimate impairment." R. I, 207.

The 1982 report of Dr. Clayton W. Gabbert, the second consulting doctor to examine Frey at the request of the Secretary, found Frey's back motion limited by about twenty-five percent in flexibility and extension. Although Dr. Christiansen had reported that Frey could bend to touch the floor without bending his knees, albeit with pain, Gabbert reported eighteen months la-

ter that Frey could flex only to within about fifteen inches of the floor. Dr. Gabbert found a "[h]istory compatible with chronic and recurrent low back pain with little objective findings at the present time," noting x-rays showing a small degree of spurring in the lumbar spine. R. I, 220. He reported his "impression that patient is over-reacting considerably to the straight leg raising" and felt that "the amount of discomfort [Frey] was having with straight leg raising has been exaggerated considerably." R. I, 219. None of the other doctors' reports raise any question about Frey's examination findings or history of disabling pain.

Only if the ALJ found and set forth good cause for rejecting the testimony of Dr. Warden and the corroborating report of Dr. Johns can we agree that the ALJ properly found that Frey was able to perform the full range of sedentary activity, and properly turned to the grids to determine that he was not disabled. Dr. Warden's testimony, however, was neither brief nor conclusory, nor unsupported by medical evidence. The tests and measurements performed by Dr. Johns corroborated Dr. Warden's measurements and examination, supporting his testimony that there was both exertional and nonexertional impairment of Frey's right elbow, limiting the range of sedentary activity he might perform. The 1982 x-rays, as well as the progressive impairment of back flexibility between the 1980 and 1982 examinations of the Secretary's consultant physicians, support Dr. Warden's diagnosis of progressive degenerative arthritis and disabling back pain.

■ It is true, as the district court set out in its findings of fact, that Dr. Warden did not perform certain tests, including a myelogram and a CAT scan, and relied in part on measurements and tests of strength and flexibility performed by Dr. Johns. In light of other evidence of tests and clinical findings by the treating physicians, however, the fact that certain selected tests were not performed is insufficient reason to disregard the findings of those

treating physicians. *Cf. Byron,* 742 F.2d at 1235; *Broadbent,* 698 F.2d at 412.

■ Moreover, findings of a nontreating physician based upon limited contact and examination are of suspect reliability. *Cf. Broadbent,* 698 F.2d at 412–14. Dr. Gabbert's report in this case appears to be based on the most limited sort of contact and examination. There is no indication of careful study of Frey's history or prior examinations; the report even misstates Frey's name. In comparison with the objective tests and measurements described by Drs. Warden and Jones in support of their diagnosis of right arm disability, Dr. Gabbert's report in this regard consists solely of boxes checked on the Secretary's form to indicate his conclusion of no limitation on right arm use. Such evaluation forms, standing alone, unaccompanied by thorough written reports or persuasive testimony, are not substantial evidence. *Brewster v. Heckler,* 786 F.2d 581, 585 (3d Cir.1986) (residual functional capacity evaluation); *Green v. Schweiker,* 749 F.2d 1066, 1071 and 1071 n. 3 (3d Cir.1984) (physical capacities evaluation forms). Such tests of flexibility as Dr. Gabbert did perform in fact supported the diagnosis of progressive disabling disease.

■ Nor is the ALJ's assertion that a family doctor "naturally advocates his patient's cause" any sort of good cause to reject the opinions of Dr. Warden and Dr. Johns. Rather, it is a conclusory statement that contradicts our established legal rule, without suggesting some exceptional basis in the facts of this case.

■ We conclude here that the ALJ erred in rejecting the treating physicians' testimony and reports. In the context of the treating physicians' evidence, the consultant physician's report does not constitute substantial evidence to support the ALJ's finding that Frey retained the capacity to perform a full range of sedentary work, permitting conclusive application of the grids for the determination that Frey was not disabled.[1]

**B**

In hearings before administrative law judges, Frey testified that, in addition to severe pain in his back, hips, knee and elbow, he has experienced a loss of strength in his right elbow and hand, has severe headaches, and suffers from stomach, bowel, and urine retention problems. He follows a therapy routine prescribed by his chiropractor, which provides some temporary pain relief; he is unable to take prescribed pain medications because they aggravate his stomach problems. Frey also testified that he is unable to sit or stand for more than brief intervals, severely limiting his ability to drive or ride in a car, or walk for any distance; and that he is able to do a very little to help around the house, mostly limited to feeding and caring for himself.

The ALJ rejected Frey's complaint of disabling pain, stating that

"while the claimant does experience some degree of pain ... his pain is not convincingly shown to be of sufficient degree—weighing all the factors such as the lack of pain medication, pertinent medical findings and opinions, observations at the hearing, and the daily activities—as to have precluded him from engaging in work of not greater than 'sedentary' physical level."

R. I, 33.

■ While subjective complaints of pain must be accompanied by medical evidence and may be disregarded if unsupported by any clinical findings, the law has never required and does not now require that medical evidence identify an impairment that makes the pain inevitable.[2] Imposition

1. Properly weighing the treating physicians' testimony and reports, the Secretary's own regulations suggest that Frey ought to have been found to be disabled without any need for further consideration. When a "permanent injury of the right hand limits the individual to sedentary jobs which do not require bilateral manual dexterity" the grids are not applicable "because this individual cannot perform the full range of work defined as sedentary ..." and "a finding of disabled would be appropriate." 20 C.F.R. § 404, Subpt. P, App. 2 § 201.00(h).

2. In 1984 the Social Security Disability Reform Act, Pub.L. No. 98-460, 98 Stat. 1794 (1984),

of such a requirement would eliminate the occasion for subjective testimony in a disability hearing, and trivialize the importance the statute continues to ascribe to statements of the claimant and his physician with respect to pain. 42 U.S.C. § 423(d)(5)(A); *Howard v. Heckler*, 782 F.2d 1484, 1488 and n. 4 (9th Cir.1986); *see also MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir.1986) ("Subjective pain testimony which is supported by clinical evidence of a condition that can reasonably be expected to produce the symptoms of which claimant complains is itself sufficient to sustain a finding of disability.").

■ The standard for evaluating a claim of disabling pain in this circuit is still the standard we enunciated in *Byron v. Heckler* and *Nieto v. Heckler*:

"Subjective pain must be evaluated with due consideration for credibility, motivation, and medical evidence. *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984).... Yet a medical finding of disability is not based solely on objective test results. It includes an evaluation of the patient's medical history and the physician's observations of the patient, and necessarily involves an evaluation of the credibility of the patient's subjective complaints of pain. A medical opinion based on all of these factors is medical evidence supporting a claim of disabling pain, even if the objective test results,

taken alone, do not fully substantiate the claim."

*Nieto v. Heckler*, 750 F.2d 59, 61–62 (10th Cir.1984).

In our discussion of the treating physician's testimony, we have summarized at some length the medical signs and findings that support Frey's claim of disabling pain. Even without more, the 1982 x-rays of Frey's spine indicate a progressively degenerative condition that could reasonably be expected to produce disabling pain in the opinion of both Dr. Warden and Dr. Johns. Medical findings, including those of Dr. Gabbert, indicated a progressive loss of flexibility that supports the diagnosis. Medically acceptable measurements and tests recorded in the medical history indicate deterioration of right arm muscle tissue and weakness that explicitly support a conclusion of disabling pain under the statutory language of § 423(d)(5)(A). Objective medical evidence that supports and is consistent with Frey's symptomatology is thus abundantly present.

■ Nor does the ALJ's citation of "daily activities" indicate substantial evidence refuting Frey's complaint of disabling pain or its credibility. In *Broadbent v. Harris*, 698 F.2d 407 (10th Cir.1983), the claimant had performed a few household tasks, had worked on his cars, and had driven on occasional recreational trips. *Id.* at 413. We held there that sporadic performance does not establish that a person

---

codified the existing standard for finding disability based on pain:

"An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that ... could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph (including statements of the individual or his physician as to the intensity and persistence of such pain or other symptoms which may reasonably be accepted as consistent with the medical signs and findings), would lead to a conclusion that the individual is under a disability. Objective medical evidence of pain or other symptoms established by medically ac-

ceptable clinical or laboratory techniques (for example, deteriorating nerve or muscle tissue) must be considered in reaching a conclusion as to whether the individual is under a disability."

*Id.* at § 3(a)(1), 98 Stat. at 1799, *codified at* 42 U.S.C. § 423(d)(5)(A). The Senate Report notes that the provision regarding the evaluation of pain

"incorporates into the statute a requirement that disability determinations take into consideration *subjective allegations* of pain only to the extent they are *consistent with medical signs and findings* which show the existence of a medical condition which could reasonably be expected to produce the alleged pain or other subjective symptoms (*identical to the current rule* applied by the Administration)."

S.Rep. No. 466, 98th Cong., 2d Sess. 3 (1984) (emphasis added).

is capable of engaging in substantial gainful activity. *Id.* In *Byron v. Heckler*, 742 F.2d 1232 (10th Cir.1984), the Secretary's Appeals Council disbelieved a claimant's complaints of pain because of his jogging activity and intermittent work as a janitor. *Id.* at 1235. We reversed, finding that "[w]orking for an hour or so as a janitor in an intermittent fashion is not inconsistent with complaints of pain, especially in light of both appellant's and [his doctor's] testimony regarding pain." *Id.* In the present case, any reliance on Frey's "daily activities" to undercut his allegation of pain is misplaced. Frey testified that he cannot sit, stand, walk, or drive a car for more than a brief interval, that he does no yard work and only minor house chores, mostly to care for himself. This lifestyle does not contradict a claim of disabling pain.

The ALJ's reliance on Frey's failure to take pain medication is similarly erroneous. In reviewing the impact of a claimant's failure to undertake treatment on a determination of disability, we consider four elements: (1) whether the treatment at issue would restore claimant's ability to work; (2) whether the treatment was prescribed; (3) whether the treatment was refused; and, if so, (4) whether the refusal was without justifiable excuse. *Weakley v. Heckler*, 795 F.2d 64, 66 (10th Cir.1986) (quoting *Teter*, 775 F.2d at 1107); *cf.* 20 C.F.R. § 404.1530. Unrefuted testimony by both Dr. Warden and Dr. Johns indicated that anti-inflammatory and anti-pain medication appropriate for Frey's degenerative arthritic condition was contraindicated because of the side effects of stomach irritation. Although pain abatement would enhance Frey's ability to perform sedentary work, the side effects would interfere with restoration of his ability to work. Indeed, the implication of Dr. Warden's testimony is that, given the side effects, the pain medications are not prescribed treatment in Frey's case. Accordingly, a determination of disability cannot be precluded in Frey's case by his failure to take pain medication.

Ordinarily we would agree with the district court's deference to the ALJ's assessments of witness credibility. We recognize that some claimants exaggerate symptoms for purposes of obtaining government benefits, and deference to the fact-finder's assessment of credibility is the general rule. But the ALJ's erroneous rejection of the treating physicians' testimony and reports without good cause and his misapplication of the legal standard for the assessment of claims of disabling pain call into question more generally his conclusions regarding credibility. *See Broadbent*, 698 F.2d at 413–14.

We conclude that the ALJ erred in his assessment of Frey's complaint of disabling pain. In the context of the extensive testimony and reports of the treating physician, supported by medical evidence, neither the opinion of the consultant physician nor any of the other factors cited by the ALJ provides substantial evidence to support his finding that Frey's pain did not preclude his performance of a full range of sedentary work, permitting conclusive application of the grids for the determination that he was not disabled.

II

Even if conclusive recourse to the grids were proper in the circumstances of this case, we would reverse the ALJ's conclusion that Frey was not disabled, because the ALJ erred in finding that Frey had skills transferable to sedentary employment. Under the grids, the determination of Frey's disability status turns upon the determination regarding the transferability of his skills. Frey's age, educational level and the skill level of his previous job are undisputed. Assuming a residual functional capacity for sedentary work, if Frey's skills are transferable, then Rule 201.15 applies, dictating a conclusion that Frey is not disabled. Absent a proper finding of transferable skills, however, Rule 201.14 applies, and dictates a conclusion that Frey is disabled. *See* 20 C.F.R. § 404, Subpt. P, App. 2 Table No. 1; *cf. Podedworny v. Harris*, 745 F.2d 210, 219 and n. 5 (3d Cir.1984).

Transferability refers to acquired work skills, not to aptitudes and attributes that

are more properly characterized as qualities necessary and useful in nearly all jobs. 20 C.F.R. § 404.1568(d). *See also Podedworny,* 745 F.2d at 220 and n. 6; *Tom v. Heckler,* 779 F.2d 1250, 1252 n. 1 (7th Cir. 1985). Equating transferable work skills with common aptitudes is incorrect as a matter of law and contrary to the Secretary's own definition:

> "If aptitudes common to most people are equated with the 'substantial vocational asset' of transferable work skills, there would be in essence no distinction between unskilled and semiskilled individuals for purposes of transferability. Thus, it would appear that the vocational expert's opinion is predicated upon an incorrect application of the Secretary's own ruling."

*Wallace v. Secretary of Health and Human Services,* 722 F.2d 1150, 1156 (3d Cir. 1983) (discussing the Secretary's 1982 definition of "skills" in Social Security Ruling 82–41).[3]

In the instant case, the Appeals Council remanded for a second administrative hearing with the direction that the ALJ obtain vocational expert testimony to determine whether Frey's previously acquired employment skills would be transferable to other specific jobs within his residual functional capacity. The Secretary's vocational expert, Dr. Lynn Searle, testified that Frey's past employment was on a highly skilled level. He then identified Frey's basic skills that would be transferable to other types of sedentary or light work activity as "an ability to use considerable understanding, common sense, logic in handling the type of work he was engaged in." R. I, 154. Dr. Searle's characterization of "understanding," "common sense," and "logic," as transferable skills, and the ALJ's reliance on this testimony for his finding that Frey had transferable skills, is

an error of law. These are aptitudes or traits, rather than acquired work abilities.

There is no substantial evidence in this vocational expert's testimony to support the ALJ's determination that Frey had transferable skills and therefore was not disabled. Absent a proper finding that Frey's skills are transferable, the grids dictate the conclusion that Frey is disabled. The ALJ erred in concluding otherwise.

We therefore reverse the Secretary's decision. In so doing, we may chose to remand for further hearing or to remand with the direction that disability benefits be awarded. *See, e.g., Broadbent,* 698 F.2d at 414; *Byron,* 742 F.2d at 1236. More than six years have passed since George Frey first applied for disability benefits under the Social Security Act. This is the second appeal of his claim to this court, following two administrative hearings and two reviews by the Appeals Council. The record has been fully and fairly developed.

A review of the record as a whole only supports the conclusion that Frey is disabled within the meaning of the Act and the Secretary's own regulations. We can see nothing to be gained by remand for further hearing; further administrative proceedings would only prolong an already too lengthy process and delay the long-overdue receipt of benefits. *Cf. Podedworny,* 745 F.2d at 221–23; *Lewin v. Schwieker,* 654 F.2d 631, 635–36 (9th Cir. 1981). Accordingly, we REVERSE and REMAND with the direction that disability benefits be awarded Frey from July 29, 1980.

---

**3.** Social Security Ruling 82–41 provides the following definition of transferable skills:

> "Skills refer to experience and demonstrated proficiency with work activities in particular tasks or jobs....
>
> Worker traits to be relevant must have been used in connection with a work activity....

It is the acquired capacity to perform the work activities with facility (rather than the traits themselves) that gives rise to potentially transferable skills."

*Id.* at 850.