25 F.3d 1056
NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Unita CRUTCHER, Plaintiff-Appellant,
v.
UNITED STATES DEPARTMENT OF HEALTH & HUMAN SERVICES, Donna
Shalala, Secretary, Defendant-Appellee.
 No. 93-6261.
 United States Court of Appeals,
Tenth Circuit.
 June 7, 1994.
 
 1
 Before ANDERSON and KELLY, Circuit Judges, and BELOT,** District Judge.
 
 ORDER AND JUDGMENT[1]
 
 2
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 3
 Plaintiff Unita Crutcher appeals from a judgment affirming the Secretary's denial of her claim for a period of disability, disability insurance benefits, and supplemental security income benefits. The issues are whether substantial evidence supports the Secretary's findings and whether the Secretary had legitimate reasons for rejecting the opinion of plaintiff's treating physician. We affirm.
 
 
 4
 Plaintiff filed applications for benefits in 1983 and 1985, both of which were denied. She filed the present application in May 1988, alleging that she became disabled on June 10, 1978, due to asthma, arthritis, and nerves. This application was denied initially and on reconsideration.
 
 
 5
 At a July 27, 1989, evidentiary hearing, plaintiff testified that she was fifty-one years old and had a seventh grade education. Her worst problem was asthma. Her medicine controlled the problem somewhat, but she still wheezed, had shortness of breath, and tired easily. She also had arthritis which made her hurt all over. Her only mental problem was not getting enough sleep. Her prior job of coil winder involved lifting twenty pounds or less and exposure to a certain amount of dust. She did not believe she could return to the job because of her arthritis and asthma. She was terminated in 1978 after a car accident, and had not attempted to work since then.
 
 
 6
 The medical records submitted to the ALJ indicate that plaintiff has had asthma since 1962. During several medical visits in 1979, 1980, and 1981, it was felt that her asthma was under control.
 
 
 7
 Several pulmonary function studies were performed.[2] Dr. Polk, a consulting physician, concluded from the studies that plaintiff had a probable mild obstructive impairment, although no pulmonary function study met the COPD listing criteria.
 
 
 8
 An October 1984 pulmonary function report was interpreted as being consistent with a severe obstructive process, and it was noted that there had been a significant deterioration since the February 1982 test. Plaintiff was admitted to the hospital for asthma in August 1985, and was seen in the emergency room in January, February, and May 1986, and September 1987 for asthma.
 
 
 9
 Plaintiff was examined by the Secretary's consulting physician, Dr. Raymond Dougherty, in July 1988. Based upon a pulmonary function test, he concluded that her asthma would restrict her from working in dusty environments or around strong vapors, moving about, lifting or carrying, and handling anything other than light objects.
 
 
 10
 In November 1988, it was noted that plaintiff had observed a mild increase in wheezing while exerting herself which resolved itself within fifteen minutes of rest.
 
 
 11
 Plaintiff was admitted to the emergency room on December 31, 1988, for breathing problems. She was hospitalized for asthma on January 2, 1989, and was discharged seven days later in good condition with a diagnosis of acute exacerbation of hyperactive airway disease.
 
 
 12
 In March 1982, plaintiff was diagnosed with degenerative arthritis. Dr. Polk found that while she was tender to palpation and had pain with range of motion in the joints, she had no limitation in motion of any joint.
 
 
 13
 Dr. Dougherty, on the other hand, found some limitation of motion. He thought she would be limited in moving about, lifting, or carrying anything other than light objects.
 
 
 14
 A consultative psychiatric exam performed on August 2, 1988, by Dr. Gary Moore failed to find any significant disorder.
 
 
 15
 The ALJ dismissed the disability insurance claim on res judicata grounds. He further found that plaintiff had the residual functional capacity to return to her past relevant work, and denied her remaining claim.
 
 
 16
 The Appeals Council denied plaintiff's claim for benefits. The district court affirmed. We review the record "to determine whether the [Secretary's] findings are supported by substantial evidence and whether the Secretary applied correct legal standards." Pacheco v. Sullivan, 931 F.2d 695, 696 (10th Cir.1991).[3]
 
 
 17
 The Secretary employs a five-step sequence for evaluating disability claims. Ragland v. Shalala, 992 F.2d 1056, 1057 (10th Cir.1993). Plaintiff challenges the Secretary's step two finding that her mental impairments are not severe. An impairment "is not severe if it does not significantly limit [one's] physical or mental ability to do basic work activities." 20 C.F.R. 404.1521(a). We have carefully reviewed the record and conclude that plaintiff's testimony and Dr. Moore's evaluation provide substantial evidence that plaintiff does not have a severe mental impairment.
 
 
 18
 Plaintiff challenges the Secretary's step four finding that she could perform her past relevant work, arguing that her combined impairments equal the listing at 20 C.F.R. Pt. 404, Subpt. P, App. 1, 10.10 for obesity. Plaintiff does not dispute the Secretary's contention that she failed to raise this issue in the district court. Consequently, we will not address it. See Channel v. Heckler, 747 F.2d 577, 579 n. 2 (10th Cir.1984).
 
 
 19
 Finally, plaintiff argues the Secretary improperly evaluated the opinion of her treating physician, Dr. Chris Puckett. He stated in a March 23, 1989, letter that plaintiff met the criteria for the respiratory impairment listing (20 C.F.R. Pt. 404, Subpt. P, App. 1, 3.02). The Secretary must give substantial weight to the treating physician's opinion, absent good cause to the contrary. Frey v. Bowen, 816 F.2d 508, 513 (10th Cir.1987). If the Secretary rejects the treating physician's opinion, she must provide specific, legitimate reasons. Id.
 
 
 20
 The Secretary's specific reasons for rejecting Dr. Puckett's opinion were that the record does not contain the pulmonary function study he relied upon, subsequent readings were higher, the only physical limitation he identified was periodic shortness of breath, and the record belies a frequent exacerbation of plaintiff's condition and does not support his opinion of total disability.
 
 
 21
 In addition to the lack of an evidentiary basis for Dr. Puckett's finding that plaintiff met the 3.02 listing, substantial evidence contradicts Dr. Puckett's opinion of total disability. Consequently, the Secretary had a legitimate basis for disregarding it.
 
 
 22
 The judgment of the United States District Court for the Western District of Oklahoma is AFFIRMED.
 
 
 
 **
 Honorable Monti L. Belot, District Judge, United States District Court for the District of Kansas, sitting by designation
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [2]
 The listing for chronic obstructive pulmonary disease (COPD), 20C.F.R. Pt. 404, Subpt. P, App. 1, 3.02A, would be met for a person of plaintiff's height if her forced expiratory volume (FEV1) and maximum voluntary ventilation (MVV) were 1.1 and 44 or below, respectively. Listing 3.02B, chronic restrictive ventilatory disorder, would be met if her total vital capacity (VC) were 1.3 or below
 
 
 [3]
 Plaintiff's insured status for disability insurance benefits ended on September 30, 1983; thus, she had to establish that she was disabled prior to that date. Her eligibility for supplemental security income benefits began in May 1988 when she filed her application