28 F.3d 113
 Unempl.Ins.Rep. (CCH) P 14031B
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Mildred Carolyn SLOAN, Plaintiff-Appellant,
v.
Donna SHALALA, Secretary of Health & Human Services,
Defendant-Appellee.
 
 1
 No. 93-6314.
 
 
 2
 United States Court of Appeals, Tenth Circuit.
 
 
 3
 July 7, 1994.
 
 
 4
 Before ANDERSON and KELLY, Circuit Judges, and BELOT,** District Judge.
 
 ORDER AND JUDGMENT[1]
 
 5
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 6
 Claimant Mildred Carolyn Sloan appeals the district court's affirmance of the Secretary's decision denying her application for social security disability benefits. Because it appears that the Secretary applied an incorrect legal standard in rejecting Ms. Sloan's treating physician's opinion, we reverse and remand for further proceedings.
 
 
 7
 On August 30, 1984, a concrete roof collapsed on Ms. Sloan, causing a compression fracture of her L1 vertebra, a vertical sheer fracture of the medial malleolus in her right ankle with torn ligaments, and several torn ligaments in her left knee. After surgery on her knee and ankle, two hospitalizations, and extensive physical therapy, Ms. Sloan's surgeon released her to return to work in December 1984.
 
 
 8
 In February 1985, Ms. Sloan consulted with orthopedic surgeon J. Patrick Evans. Upon conducting a physical examination and a full series of x-rays, Dr.Evans found that Ms. Sloan was still in the process of healing and that "[t]here is no way at all that this patient could be expected to return to work at this time." R. 172. Dr.Evans found tenderness and crepitation in Ms. Sloan's ankle and knee, with medial instability of the knee. X-rays revealed a healed ankle fracture and mild degenerative post-traumatic changes in the left knee. Physical examination of Ms. Sloan's back demonstrated a limited range of motion and pain, and her x-rays showed that her compression fracture was healing "in satisfactory position with slight wedging." Id. Dr. Evans prescribed 600 milligrams of Motrin, four times a day, and a gradual increase in Ms. Sloan's activities.
 
 
 9
 Dr. Evans continued to treat Ms. Sloan's injuries throughout 1985 and into February 1986. In March 1985, Dr. Evans opined that Ms. Sloan remained totally disabled. In April 1985, after a physical examination, Dr. Evans concluded that Ms. Sloan's injuries were permanent and that she would continue to suffer persistent pain, particularly in her low back. The examination revealed tenderness in Ms. Sloan's ankle and low back area, with marked patellofemoral crepitation in her left knee. Dr.Evans indicated that Ms. Sloan had damaged the surface and ligaments of her patella and would need surgery in the future on both her knee and ankle. Dr. Evans reiterated that Ms. Sloan could not return to her former occupation. Id. at 176.
 
 
 10
 In July 1985, Dr.Evans noted that Ms. Sloan was experiencing tingling in both legs and almost constant pain in her lower back. He again indicated that her injuries were permanent and opined that Ms. Sloan would require surgery on her ankle and knee. In February 1986, Dr. Evans conducted a physical examination and took more x-rays. His examination disclosed pain and popping in Ms. Sloan's ankle, tenderness in her knee and lower back, and restricted motion of the back. Ms. Sloan's x-rays revealed that the compression fracture in her lumbar spine had healed with deformity. Based on this information, Dr. Evans reiterated that Ms. Sloan's conditions were permanent and that she would continue to suffer pain from her back, ankle, and knee. Id. at 177. He indicated there was little he could do to improve her condition.
 
 
 11
 In March 1987, Ms. Sloan was examined by Dr. Miller, who noted a decreased range of motion and continued pain in Ms. Sloan's knee, ankle, and lower back, muscle spasm in the back, and positive straight leg raising at twenty-five degrees. Dr. Miller concluded that Ms. Sloan had a 68.5% impairment to her body as a whole. Id. at 181-83. In September 1987, Ms. Sloan was examined by Dr. Chestnut, who noted Ms. Sloan's complaints of pain, but found no limitation of her range of motion, neurologic deficits, or instability. X-rays revealed degenerative changes in Ms. Sloan's ankle and knee, narrowing of the knee joint space, a 50% L1 compression fracture, and transitional changes to L5-S1 bilaterally. Dr. Chestnut found Ms. Sloan to be 16% impaired and concluded that she could work. Id. at 184-85.
 
 
 12
 From 1985 through 1989, Ms. Sloan was treated by Dr. Harrison for unrelated conditions. Throughout his notes, Dr. Harrison adverts to Ms. Sloan's persistent pain, which was partially relieved by Motrin or Nuprin and rest. Dr. Harrison also notes Ms. Sloan's complaints of anxiety and depression. Id. at 190-98.
 
 
 13
 In August 1989, Ms. Sloan was sent for a consultative examination with Dr. Dougherty. Dr. Dougherty, whose practice is limited to pulmonary diseases, found that Ms. Sloan had a normal posture and gait, and a completely normal range of motion in her back, knee, and ankle. Id. at 200-205.
 
 
 14
 In March 1990, Ms. Sloan was seen by Dr. Cranmer for chronic pain in her back, right ankle, and left knee. Dr. Cranmer diagnosed Ms. Sloan as suffering from arthritis and prescribed Feldene, noting stiffness in her knee, swelling in her ankle, and pain upon palpitation in her back, ankle, and knee. Id. at 209.
 
 
 15
 Finally, Ms. Sloan was reevaluated by Dr.Evans in September 1991. Upon taking more x-rays, Dr.Evans observed "significant degenerative changes in all areas." Id. at 210. Dr.Evans opined that Ms. Sloan would never be able to engage in gainful employment, noting that sitting and standing were painful and that any walking or carrying activities were virtually impossible.
 
 
 16
 Ms. Sloan applied for disability benefits on June 9, 1989, alleging disability since October 30, 1984. After an Administrative Law Judge (ALJ) found that Ms. Sloan could perform her past work, the Appeals Council remanded for clarification of the exertional level of such work and a determination whether she could perform other jobs in the national economy. After a hearing, Ms. Sloan's application was denied because she could perform certain sedentary jobs identified by a vocational expert. The Appeals Council denied review and the district court affirmed. This appeal followed.
 
 
 17
 Our review of the Secretary's decision is limited to "whether [her] findings are supported by substantial evidence in the record and whether [she] applied the correct legal standards." Emory v. Sullivan, 936 F.2d 1092, 1093 (10th Cir.1991). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). Failure to apply the correct legal test constitutes a ground for reversal. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 801 (10th Cir.1991).
 
 
 18
 Ms. Sloan argues that the Secretary failed to apply the proper legal standards in rejecting the opinion of her orthopedist, Dr. Evans. The ALJ rejected Dr. Evans' opinion because (1) it was based chiefly on Ms. Sloan's subjective complaints of pain; (2) it was not consistent with Dr. Dougherty's findings that Ms. Sloan had normal posture and gait and normal ranges of motion; and (3) it was inconsistent with the mild over-the-counter medications taken by Ms. Sloan.
 
 
 19
 A treating physician's opinion on the nature and severity of a claimant's impairments must be given controlling weight if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. 404.1527(d)(2); see also Frey v. Bowen, 816 F.2d 508, 513 (10th Cir.1987). If, however, the treating physician's opinion is not well-supported or is inconsistent with other evidence, the ALJ must consider the following specific factors to determine what weight to give the opinion: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the Secretary's attention which tend to support or contradict the opinion. 20 C.F.R. 404.1527(d)(2)-(6). The Secretary must give specific, legitimate reasons for disregarding the treating physician's opinion that a claimant is disabled. See Williams v. Bowen, 844 F.2d 748, 758 (10th Cir.1988).
 
 
 20
 Here, the ALJ failed to mention or apply the factors listed in 404.1527(d). After reviewing the record we conclude that Dr.Evans' medical opinion may have been improperly rejected. Dr. Evans treated Ms. Sloan over a several-year period specifically for the injuries in question, prescribing both medication and exercises to help her conditions. He conducted several physical examinations and ordered x-rays on a number of occasions. The physical findings and x-rays appear to support Dr.Evans' opinion, which is consistent with the extensive injuries reported by her surgeon and the limitations noted by Dr. Miller and Dr. Cranmer.
 
 
 21
 Importantly, Dr.Evans' opinion is in the area of his expertise, that is, orthopedics. In contrast, Dr. Dougherty, whose practice is limited to pulmonary diseases, saw Ms. Sloan on one occasion, performed only a range of motion test with no reference to past or present x-rays, and never treated Ms. Sloan. As the ALJ made no mention of these factors nor explained why Dr.Dougherty's findings were entitled to more weight than those of Dr. Evans, we conclude the case must be remanded for reevaluation. See Baker v. Bowen, 886 F.2d 289, 291 (10th Cir.1989)(holding that when it is unclear whether the ALJ applied the appropriate standard, the proper remedy is reversal and remand).
 
 
 22
 The ALJ's rejection of Dr. Evans' opinion as resting chiefly on Ms. Sloan's subjective complaints and contrary to her medication record is also not supported by the evidence. Dr. Evans' opinion was based not only upon Ms. Sloan's complaints, but upon multiple physical examinations and several series of x-rays taken over a six-year period. Moreover, when considering the severity of her pain, the ALJ does not mention Ms. Sloan's testimony that she wears a support belt, uses a hot pad, and lies down daily to relieve her pain.
 
 
 23
 Finally, Ms. Sloan argues that the ALJ should have developed the record regarding her potential mental impairment of post-traumatic stress disorder. We disagree. Although Dr. Harrison's notes occasionally mention that Ms. Sloan was depressed and anxious and Ms. Sloan testified that she was "nervous," such minimal references do not constitute " 'evidence of a mental impairment that allegedly prevented claimant from working,' " so as to require the Secretary to follow the procedures set forth in 20 C.F.R. 404.1520a. Andrade v. Secretary of Health & Human Services, 985 F.2d 1045, 1048 (10th Cir.1993)(quoting Hill v. Sullivan, 924 F.2d 972, 975 (10th Cir.1991)).
 
 
 24
 The judgment of the United States District Court for the Western District of Oklahoma is REVERSED, and the case is REMANDED to the district court for remand to the Secretary for further proceedings consistent with this opinion.
 
 
 
 **
 Honorable Monti L. Belot, District Judge, United States District Court for the District of Kansas, sitting by designation
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470