**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 16 2003**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

MARY A. SCHWARZ,

        Plaintiff-Appellant,

v.

JO ANNE B. BARNHART,
Commissioner of Social Security
Administration,

        Defendant-Appellee.

No. 02-6158
(D.C. No. 00-CV-1647-L)
(W.D. Okla.)

---

**ORDER AND JUDGMENT** *

---

Before **HENRY** , **BRISCOE** , and **MURPHY** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore

ordered submitted without oral argument.

---

\*     This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Claimant Mary A. Schwarz appeals the district court's affirmance of the decision by the Commissioner of Social Security denying her applications for disability benefits and supplemental security income (SSI). Because the administrative law judge (ALJ) erred in rejecting the uncontradicted opinion of claimant's treating psychologist, we reverse the district court's decision and remand with directions to remand to the Commissioner for further proceedings consistent with this decision.

On October 3, 1995, claimant filed for disability and SSI benefits, alleging an inability to work after May 20, 1994, due to degenerative disc disease, protruding discs, rheumatoid arthritis, depression, fibromyositis, and severe headaches. Aplt. App., Vol. II at 157. After her applications were denied at the first and second administrative levels, on May 1, 1997, she participated in a hearing before the ALJ. Claimant was represented by counsel at the hearing.

In addition to the evidence contained in her medical records, claimant and her treating psychologist testified about her physical and mental conditions. Dr. Crawford was the clinical director of New Horizons Community Counseling and Mental Health Service (New Horizons). She testified that after treating claimant once or twice a week for more than a year, it was her opinion that claimant met the social security listing for major depression most of the time.

*Id.* at 82-84; 20 C.F.R. Subpart P, App. 1 § 12.04 (1997). A vocational expert testified about the availability of jobs which claimant might be able to perform.

After the hearing, the ALJ submitted claimant's records to a consulting physician with a specialty in psychiatry for an opinion whether claimant met the listing for depression. Aplt. App., Vol. II at 328. Based on her review of the record, Dr. McCance opined that "[a]n equaling of § 12.04 may be present in that a significantly depressing aspect of this claimant[']s life is the well documented chronic pain syndrome secondary to her diagnosed [medical conditions]." *Id.* at 331-32. The consultant noted that the earliest claimant was shown to meet the listing's "A" criteria was in March 1996. *Id.* at 332-33.

On July 22, 1997, the ALJ issued his decision, finding that although claimant could not return to her former work, she retained the ability to perform a significant number of jobs and therefore was not disabled. Rejecting the opinions of Dr. Crawford and Dr. McCance, the ALJ found that claimant's condition did not meet or equal the requirements of § 12.04B, and that she retained the ability to do light work which did not require prolonged sitting, overhead work, or more than superficial contact with the public, supervisors, or coworkers. The ALJ determined that claimant was moderately limited in her ability to deal with work stresses and to understand, remember, and carry out detailed instructions. Almost two years later, the Appeals Council denied review,

making the ALJ's determination the final decision of the Commissioner. The district court affirmed, and this appeal followed.

We review the Commissioner's decision to determine only whether it was supported by substantial evidence and whether legal errors occurred. *See Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994). Substantial evidence is that which a "reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted). We may not reweigh the evidence or substitute our judgment for that of the agency. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). We do not defer, however, to the agency's conclusions of law.

Claimant argues that the ALJ committed legal error by disregarding the testimony of her treating psychologist that claimant met the listing for depression. A treating source's opinion is to be given controlling weight if it is "well supported by medically acceptable clinical . . . diagnostic techniques and is not inconsistent with the other substantial evidence." 20 C.F.R. § 404.1527(d)(2); *see Goatcher v. United States Dep't of Health & Human Servs.*, 52 F.3d 288, 290 (10th Cir. 1995); *Frey v. Bowen*, 816 F.2d 508, 513 (10th Cir. 1987).

If the ALJ decides that a treating source's opinion is not entitled to controlling weight, he must determine the weight it should be given after

considering the following factors: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the treating source's opinion is supported by objective evidence; (4) whether the opinion is consistent with the record as a whole; (5) whether or not the treating source is a specialist in the area upon which an opinion is given; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. § 404.1527(d)(2); *Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001). An ALJ cannot reject a treating source's opinion without identifying "specific, legitimate reasons." *Goatcher*, 52 F.3d at 290; *Frey*, 816 F.2d at 513.

Here, the ALJ rejected Dr. Crawford's opinion that claimant met § 12.04 because she did not discuss the individual "B" criteria of the listing; because there was no record that she performed a thorough mental status examination on claimant; because the opinion was not supported by sufficient clinical findings from psychological tests; and because the opinion was contrary to more positive notations in the treating psychologist's records. Aplt. App., Vol. II at 35. We conclude the ALJ's reasons for rejecting Dr. Crawford's opinion were not legitimate.

It is undisputed that claimant suffered from depression and that her mental condition stemmed in large part from chronic upper back and neck pain. In May 1994, claimant injured her upper back/neck in a work-related accident. Over the next eighteen months, she received medical care, chiropractic care, and physical therapy. Claimant's chiropractor noted her significantly limited range of motion and, based on x-rays, diagnosed her with "acute traumatic subluxation of the C5-C6 vertebrae with resultant cephalgia, radiculitis, and spasms; also subluxation of the T5 thoracic spine, causing subscapular and chest pain." Aplt. App., Vol. II at 186. An MRI showed slight degenerative bulging at C5-6 and C6-7 with a small central disc protrusion at C6-7 that did not appear to compress the cord or nerve roots. *Id.* at 187.

Claimant received physical therapy twice weekly from October 1994 until September 1995, when she discontinued treatment for financial reasons. In November 1994, claimant's physical therapist described her physical condition as "acute incapacitating" cervical, shoulder, and arm pain, accompanied by frequent severe headaches. *Id.* at 202. Physical therapy records consistently noted that claimant suffered severe pain, spasms, and limitations on her range of motion, but that her condition was slowly improving. *Id.* at 282-89.

Claimant was treated for her injury from October 1994 until June 1996 by Dr. Metcalf. His records document claimant's back and neck pain, severe

headaches, muscle spasms, limited function of her arms, anxiety, and depression. In March 1995, claimant's blood tests revealed a very high rheumatoid factor, which Dr. Metcalf concluded was the cause for the slowness of claimant's recovery from her injury. In April 1995, claimant was hospitalized for three days due to severe headaches, blurred vision, vomiting, and neck pain. Dr. Metcalf has diagnosed claimant with a cervical disc injury, probable rheumatoid arthritis, fibromyalgia, and/or fibromyositis, and has opined that her physical conditions alone could total fifty percent disability of the whole body. *Id.* at 221, 226-27, 230, 232.

Claimant was first diagnosed with depression secondary to her physical injury by Dr. Metcalf in January 1995. He prescribed anti-depressants, which seemed to help. After the death of claimant's husband in August 1995, and the discontinuation of her physical therapy in September 1995, Dr. Metcalf noted that claimant suffered from increased pain, depression, and anxiety. *Id.* at 229, 231-32.

On November 27, 1995, claimant underwent a consultative psychological examination. Dr. France's report recounted claimant's history of severe pain and depression, and noted the recent death of her husband. He reported suicidal ideation, sleep disturbances, lack of appetite and weight loss, lack of recreational activities, crying during the examination, and self-medication with alcohol.

Dr. France diagnosed claimant with the following: Axis I–dysthymic disorder, grieving, and alcohol abuse in partial remission; Axis II–deferred; Axis III–headaches and physical therapy for back and shoulder pain; Axis IV–poor; and Axis V–poor. [1] *Id.* at 209. In December 1995, Dr. Swami, a consultative physician, noted during a medical examination that claimant "look[ed] depressed and anxious." *Id.* at 213.

On March 5, 1996, claimant sought emergency help at New Horizons. Her intake record reported that she was severely depressed and drinking heavily. *Id.* at 279. The report noted the recent death of claimant's husband, her back injury with chronic pain, and her inability to work. The report also described claimant's loss of appetite, sleep disturbances, back pain and headaches, loss of interest in social activities, and weight loss, and recommended intervention for depression, adjustment to disability, and alcohol abuse. *Id.* at 279-81.

On March 12, 1996, claimant's New Horizons records show the following diagnoses: Axis I–major depressive episode, recurrent, and adjustment disorder,

---

[1]    Because mental disorders are often characterized by impairments in several areas, diagnosis requires a multiaxial evaluation. Axis I refers to the individual's primary clinical disorders that will be the foci of treatment; Axis II refers to personality or developmental disorders; Axis III refers to general medical conditions; Axis IV refers to psychosocial and environmental problems; and Axis V refers to the clinician's assessment of an individual's level of functioning, often by using a Global Assessment of Functioning rating (GAF), which does not include physical limitations. *See* American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders (DSM-IV), (4th ed. 1994), pp. 25-32.

mixed depression and anxiety; Axis II–none, Axis III–disc disorder; Axis IV–(blank); and Axis V–40. *Id.* at 250. Claimant began individual and group therapy and met with a psychiatrist monthly regarding her medications. Treatment records demonstrate that from mid-spring to mid-fall her mood was volatile, she sometimes showed signs of severe depression and anxiety, other times she reported feeling much better. *Id.* at 265-78.

In November 1996, claimant's records show that she had increased pain, became increasingly depressed, and began drinking heavily. On January 11, 1997, claimant admitted herself to the crisis unit at New Horizons, and was placed on suicide watch. Upon admission, claimant's conditions were diagnosed as follows: Axis I–296.30 (major depressive disorder–recurrent); Axis II–V71.09 (none); Axis III–back injury; Axis IV–economic & education; Axis V–50; and Level of Functioning–35 (GAF). *Id.* at 245, 248.

Claimant was discharged on January 13, 1997, and continued her individual and group therapy. On January 24, 1997, Dr. Crawford wrote a letter updating claimant's condition. The psychologist noted claimant's diagnosis of a depressive disorder with anxiety caused by chronic pain, inability to work, and her husband's death. Dr. Crawford stated that although claimant was making good progress in therapy, her chronic pain "results in the reoccurrence of severe depressive episodes, and she tries to self-medicate both the depression and pain with

alcohol." *Id.* at 242. Dr. Crawford also related the opinion of claimant's treating psychiatrist that claimant's behavior leading to her hospitalization was an attempt "to kill herself due to her inability to improve her current situation [of] chronic pain and financial crisis." *Id.*

In February and March, claimant's mental condition appears to have improved, and she reported obtaining a GED and signing up for college. However, treatment notes from April 1997 related that claimant was again suffering from increased pain, hopelessness, depression, and anxiety. In May 1997, claimant's psychologist testified about claimant's condition.

Contrary to the ALJ's finding, the record shows that Dr. Crawford discussed the individual "B" criteria at the hearing. The treating psychologist opined that claimant met listing § 12.04, including the "B" criteria, most of the time.[2] *Id.* at 82. She specifically testified that "[w]hen her depression is at its

---

[2] To meet listing § 12.04, an individual must meet the criteria of both "A" and "B" or "C." Here, the issue is whether claimant met the "B" criteria at the time of the 1997 hearing, which required that her condition result in at least two of the following:

    1. Marked restriction of activities of daily living; or
    2. Marked difficulties in maintaining social functioning; or
    3. Deficiencies of concentration, persistence, or pace, resulting in frequent failure to complete tasks in a timely manner . . . ; or
    4. Repeated episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from that situation or to experience exacerbation of signs and symptoms (which

(continued...)

wors[t], she is unable to concentrate.  She has problems with memory, ability to follow through on activities, a real low energy level, that type of thing."  *Id.* Dr. Crawford noted that claimant's GAF normally stayed between 45 and 50, which meant that she had "serious symptoms" or "serious impairment in social, occupational, or school functioning."  DSM-IV at 32.  The psychologist testified that in the prior year claimant had twice deteriorated or decompensated so severely that she needed crisis intervention, and that there were several other times when claimant's functioning deteriorated to a GAF level of 35 to 40, but she did not require inpatient care.  Aplt. App., Vol. II at 83.  A GAF level of 30-40 is defined as "[s]ome impairment in reality testing or communication . . . OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood."  DSM-IV at 32.  Given that Dr. Crawford was also a consulting psychologist for the social security administration, she clearly understood the "B" criteria and identified specific evidence to support her conclusion that claimant met the criteria most of the time.  Thus, the ALJ's rejection of Dr. Crawford's opinion on the ground that she did not discuss the individual "B" criteria was unsound.

---

[2](...continued)
  may include deterioration of adaptive behaviors).

20 C.F.R. Subpart P, App. 1 § 12.04B (1997).

Further, the ALJ erred in rejecting Dr. Crawford's opinion on the grounds that the psychologist did not perform a thorough mental status exam. As described above, claimant was thoroughly evaluated on at least two occasions at New Horizons, in March 1996 and in January 1997. Although the first mental examination was performed by a staff member, it was done under Dr. Crawford's supervision, and her signature appears on the evaluation. *See* Aplt. App., Vol. II at 279. The second mental status examination was performed by claimant's psychiatrist at New Horizons, and was certainly available to Dr. Crawford as claimant's treating psychologist. Because Dr. Crawford treated claimant once or twice a week for more than a year, she was in a position to constantly evaluate her patient's mental status.

The ALJ also erred in discounting the treating psychologist's opinion for lack of clinical findings based on psychological tests. There is no "dipstick" test for disabling depression. *See Sisco v. United States Dep't of Health & Human Servs.*, 10 F.3d 739, 744 (10th Cir. 1993). The accepted clinical technique for diagnosing such an impairment is to assess the existence and severity of symptoms and signs identified by the American Psychiatric Association in the DSM-IV. *See* DSM-IV at xxii-xxiv, 1-9. This assessment is usually based on a patient's subjective reports and the psychologist's own observations. Although psychological tests may be used in evaluating a patient, they do not produce

-12-

laboratory-type results, instead requiring interpretation of the patient's responses. The 1997 regulations specified that a psychological opinion could rest either on observed signs and symptoms or on psychological tests. *See* 20 C.F.R. Subpart P, App. 1 § 12.00B (1997). As Dr. Crawford's opinion rested on the use of a diagnostic technique accepted by both the psychological community and the regulations, the ALJ erred in requiring that her opinion be based on findings from psychological tests. *See Sisco*, 10 F.3d at 744.

Finally, the ALJ rejected Dr. Crawford's opinion because it was inconsistent with her treatment notes. The ALJ may not pick and choose particular entries in a medical record to support his ruling, he must consider the record as a whole. *See Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984). Here, although there were periods when claimant's condition improved, her treatment records show that these periods were intermittent and short-lived. Further, Dr. Crawford's opinion was consistent with the consulting opinions of both Dr. McCance and Dr. France. Because the ALJ's reasons for rejecting Dr. Crawford's uncontradicted opinion were not sound, he should have given controlling weight to the treating psychologist's opinion that claimant met the criteria of listing § 12.04. *Drapeau*, 255 F.3d at 1213-14.

Claimant also argues that the ALJ's determination of her mental functional abilities was not supported by substantial evidence. We agree. After rejecting all

of the assessments of claimant's mental impairment, the ALJ appears to have completed the psychiatric review technique (PRT) form based on his own view of the evidence. The ALJ may not substitute his lay opinion for a medical opinion. *See Sisco*, 10 F.3d at 744. Rather, '[t]here must be competent evidence in the record to support the conclusion recorded on the PRT form, and the ALJ must discuss in his opinion the evidence he considered in reaching the conclusions expressed on the form." *Washington v. Shalala*, 37 F.3d 1437, 1442 (10th Cir. 1994) (further quotation omitted).

Because the opinion of claimant's treating psychologist was well-supported and was not contradicted by other substantial evidence, the ALJ erred in failing to give controlling weight to Dr. Crawford's opinion that claimant met the criteria of listing § 12.04. The ALJ compounded this error by substituting his own opinion for that of the psychological experts to complete the PRT.

The uncontradicted evidence established that claimant's condition met or equaled the requirements of listing § 12.04, at least from her March 1996 entry into treatment at New Horizons through May 1997, when her treating psychologist testified at the hearing. Whether claimant was disabled before March 1996, or after May 1997, are unanswered questions. We must remand this case, therefore, for further proceedings to determine the onset date of claimant's disabling

-14-

condition, and to determine whether her condition improved subsequent to May 1997.

The judgment of the district court is REVERSED, and the case is REMANDED to the district court with directions to remand the case to the Commissioner for further proceedings consistent with this decision.

Entered for the Court


Mary Beck Briscoe
Circuit Judge