David W. HIGGINS, Plaintiff,

v.

Jo Anne B. BARNHART,
Commissioner of Social
Security, Defendant.

No. 02–4123–JAR.

United States District Court,
D. Kansas.

Dec. 4, 2003.

Steven M. Tilton, Tilton & Tilton LLP, Topeka, KS, for Plaintiff.

Tanya S. Wilson, Office of United States Attorney, Topeka, KS, for Defendant.

***MEMORANDUM AND ORDER
REVERSING AND
REMANDING***

ROBINSON, District Judge.

Plaintiff David Higgins brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of Defendant Commissioner of Social Security's denial of his application for disability insurance benefits under Title II of the Social Security Act and denial of his application for supplemental security benefits under Title XVI. According to Plaintiff, Defendant failed to properly weigh the opinions of various physicians, failed to properly evaluate Plaintiff's credibility and consequently erred in assessing Plaintiff's residual functional capacity (RFC).[1] Because the Court concludes that the decision is in part not based on substantial evidence and/or on an

---

1. Although Plaintiff asserts that the ALJ failed to appropriately assess his mental RFC, Plaintiff neither explains nor develops this argument.

incorrect application of the law, the Court reverses and remands this case.

### Procedural Background

Plaintiff David Higgins filed applications for Social Security Disability and Supplemental Security Income benefits under Titles II and XVI of the Social Security Act on May 28, 1998, alleging disability beginning May 15, 1998. These applications were denied at the initial and reconsideration levels. At Plaintiff's request, an administrative hearing was held before an Administrative Law Judge (ALJ) on January 12, 2000. The ALJ rendered a decision unfavorable to Plaintiff, which Plaintiff appealed. The Appeals Council remanded the case back to the ALJ for further consideration. On October 24, 2001, another ALJ rendered a decision unfavorable to Mr. Higgins. On June 11, 2002, the Appeals Council denied review of this decision, which stands as the Commissioner's final decision. Plaintiff then sought review in this Court.

### Standard of Review

▮▮▮▮ Judicial review under 42 U.S.C. § 405(g) is limited to whether Defendant's decision is supported by substantial evidence in the record as a whole and whether Defendant applied the correct legal standards.[2] The Tenth Circuit has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[3] In the course of its review, the court may not reweigh the evidence or substitute its judgment for that of Defendant.[4] Reversal is appropriate not only for lack of substantial evidence, but also for cases in which the Commissioner applies the wrong legal standards.[5]

### Relevant Framework for Analyzing Claim of Disability and the ALJ's Findings

"Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment ...."[6] The Social Security Act further provides that an individual "shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy ...."[7]

The Social Security Administration has established a five-step sequential evaluation process for determining whether a claimant is disabled,[8] and the ALJ in this case followed the five-step process. If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary.[9] Step one determines whether the claimant is presently engaged in substantial gainful activity.[10] If he is, disabili-

2. *See White v. Massanari,* 271 F.3d 1256, 1257 (10th Cir.2001) (citing *Castellano v. Sec'y of Health & Human Servs.,* 26 F.3d 1027, 1028 (10th Cir.1994)).

3. *Id.* (quoting *Castellano,* 26 F.3d at 1028).

4. *Id.*

5. *Glass v. Shalala,* 43 F.3d 1392, 1395 (10th Cir.1994).

6. *Williams v. Bowen,* 844 F.2d 748, 750 (10th Cir.1988) (quoting 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (1982)).

7. *Id.* (quoting 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B) (1982 & Supp. III 1985)).

8. *See id.* (citing 20 C.F.R. §§ 404.1520, 416.920 (1986)).

9. *Id.*

10. *Id.*

ty benefits are denied.[11] If he is not, the decision maker must proceed to the second step.[12] Here, the ALJ determined that Plaintiff was not engaged in substantial gainful activity and, thus, properly proceeded to the second step.

The second step of the evaluation process involves a determination of "whether the claimant has a medically severe impairment or combination of impairments."[13] This determination is governed by certain "severity regulations," is based on medical factors alone, and, consequently, does not include consideration of such vocational factors as age, education, and work experience.[14] "Pursuant to the severity regulations, the claimant must make a threshold showing that his medically determinable impairment or combination of impairments significantly limits his ability to do basic work activities."[15] If a claimant cannot show that his impairments would have more than a minimal effect on his ability to do basic work activities, he is not eligible for disability benefits.[16] However, if the claimant presents medical evidence and makes the de minimis showing of medical severity, the decision maker

proceeds to step three.[17] The ALJ in this case concluded that Plaintiff had the severe impairments of stenosis of the aortic valve with left ventricular hypertrophy, status post valve replacement in June 1998, insulin dependent diabetes mellitus with some retinopathy as well as probable peripheral neuropathy in the lower extremities.

In step three, the ALJ "determines whether the impairment is equivalent to one of a number of listed impairments that the Secretary acknowledges are so severe as to preclude substantial gainful activity."[18] The claimant is entitled to benefits if the impairment is listed and thus conclusively presumed to be disabling.[19] If not, the evaluation proceeds to the fourth step, where the claimant must show that the "impairment prevents [the claimant] from performing work he has performed in the past."[20] "If the claimant is able to perform his previous work, he is not disabled."[21] With respect to the third step of the process in this case, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or

11. *Id.*

12. *Id.*

13. *Id.* (quoting *Bowen v. Yuckert*, 482 U.S. 137, 107 S.Ct. 2287, 2291, 96 L.Ed.2d 119 (1987)).

14. *Id.* (citing 20 C.F.R. §§ 404.1520(c), 416.920(c) (1986)).

15. *Id.* at 750–51 (citing 20 C.F.R. §§ 404.1521(b), 416.921(b) (1986)). Medically severe is defined as significantly limiting "ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). Basic work activities are defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b),416.921(b). Such abilities and aptitudes include "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling"; "[c]apacities for seeing, hearing,

and speaking"; "[u]nderstanding, carrying out, and remembering simple instructions"; "[u]se of judgment"; "[r]esponding appropriately to supervision, co-workers and usual work situations"; and "[d]ealing with changes in a routine work setting." *Id.*

16. *Williams*, 844 F.2d at 751.

17. *Id.*

18. *Id.* (citing 20 C.F.R. §§ 404.1520(d), 416.920(d) (1986); *Bowen v. Yuckert*, 107 S.Ct. at 2291).

19. *Id.*

20. *Id.* (citing 20 C.F.R. §§ 404.1520(e), 416.920(e) (1986); *Bowen v. Yuckert*, 107 S.Ct. at 2291).

21. *Id.*

equaled any criteria for a listed impairment.

The ALJ specifically found that Plaintiff,
. . .

> has stenosis of the aortic valve with left ventricular hypertrophy, status post valve replacement in June 1998 and has done well since then; has insulin-dependent diabetes mellitus with some retinopathy as well as probable peripheral neuropathy in the lower extremities but questionable compliance with his diabetic regimen; a history of episodic alcohol abuse; mild, non-severe dysthymia and is status post left radius fracture and was wearing a brace on his wrist at the time of the hearing . . . .

At the fourth step, the ALJ concluded that Plaintiff was unable to perform past relevant work. Thus, the ALJ proceeded to the fifth and final step of the sequential evaluation process-determining whether the claimant has the residual functional capacity (RFC) "to perform other work in the national economy in view of his age, education, and work experience." [22] At that point, the ALJ properly shifted the burden of proof to Defendant to establish that Plaintiff retains the capacity "to perform an alternative work activity and that this specific type of job exists in the national economy." [23]

At this fifth step, the ALJ concluded that Plaintiff was not disabled, a conclusion that rested on a finding that

> Claimant has at all times retained a residual functional capacity for a range of light work where he has no limitation on his ability to sit, can stand for 30–45 minutes at a time for no more than 2–3 hours total in an 8–hour day, can walk 2–3 blocks, can lift 15–20 pounds, can

bend and climb occasionally, has no limitation on his ability to grip and grasp with his right, dominant hand and no limitation with his left hand through March 2001, but thereafter does have significant left hand limitations in addition to all the other limitations set forth hypothetically at the time of his hearing.

Utilizing the testimony of a vocational expert, the ALJ found that Plaintiff would be able to perform the jobs of light cashier, photocopy machine operator, microfilm mounter, cashier, and information clerk.

With regard to Plaintiff's subjective complaints and testimony about his impairments and limitations, the ALJ found that

> Claimant's testimony as to the severity of his impairments and attending symptoms is found to be no more than partially credible and not credible insofar as he has alleged a disabling need to nap or lie down, disabling fatigue, disabling adverse side effects from medications or disabling shortness of breath . . . .

### Analysis of Plaintiff's Specific Arguments

Plaintiff contends that the ALJ erred in assessing his residual functional capacity (RFC), an error flowing from the ALJ's failure to properly weigh the opinions of two treating physicians, a consulting physician who examined Plaintiff and two physicians who reviewed the medical records, and the ALJ's failure to properly evaluate Plaintiff's noncompliance in evaluating Plaintiff's credibility and whether Plaintiff is disabled.

The ALJ gave great weight to the testimony of Dr. Sofia Khan, who testified as an expert at the administrative hearing

---

**22.** See id. (quoting Bowen v. Yuckert, 107 S.Ct. at 2291).

**23.** See id. (citations omitted); accord White, 271 F.3d at 1258 (at fifth step, burden of proof shifts to Commissioner to show that claimant retains the functional capacity to do specific jobs).

about the existence and severity of impairments and further provided an opinion of Plaintiff's RFC. Dr. Khan did not treat or examine Plaintiff, but the ALJ relied on her testimony "[i]n order to more fully and fairly evaluate the objective medical evidence as well as the multitude of opinions of record ..." noting that Dr. Khan's testimony was "... based on her review of the entire medical record in conjunction with questions asked as to claimant's allegations at the time of the hearing."

■ There were a multitude of consistent as well as inconsistent opinions provided in this case, by: Dr. Mary Vernon, Plaintiff's primary treating physician; Dr. Karil Bellah, Plaintiff's treating cardiologist; Dr. Linda Johnson, a consulting neurologist who examined Plaintiff; Dr. Sofia Khan, who neither treated nor examined Plaintiff; and Dr. Emil Goering, a state agency physician who also reviewed records but did not examine or treat Plaintiff. Generally, Defendant must give substantial weight to the treating physician's opinion;[24] less weight to the opinions of doctors who have examined but not treated the claimant; and the least weight to opinions of doctors who have merely reviewed records but not treated or examined the claimant.[25] But in this case, the ALJ accepted most of Dr. Khan's opinions, even those that conflicted with the opinions of Plaintiff's treating physicians and/or consulting physician who examined Plaintiff.

■ First, the ALJ found that Plaintiff could stoop, an opinion that Dr. Khan did not express, but by inference made by not identifying any limitation in his ability to stoop. Yet, both Dr. Bellah, the treating cardiologist, and Dr. Johnson, the consulting neurologist, opined that Plaintiff should never stoop, kneel or crawl. Defendant must give *controlling* weight to a treating physician's opinion about the nature and severity of a claimant's impairments, including symptoms, diagnosis and prognosis, and any physical or mental restrictions, if 'it is well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record.' "[26] The ALJ's only explanation for adopting Dr. Khan's opinion, was that Plaintiff consistently testified that he could stoop. Yet Plaintiff also testified that the doctors had restricted his lifting and stooping; and when asked in "what way did they limit your stooping," Plaintiff replied "[b]ending over type, down and over." Later when asked if he was able to stoop, Plaintiff replied "Oh, yeah. I can stoop now." The regulations provide a list of acceptable reasons to reject a doctor's opinion; the list does not include a claimant's testimony.[27] Even if Plaintiff's testimony is a proper reason to reject the opinion of his treating physician, in this case, Plaintiff's testimony was unclear and ambiguous. The ALJ therefore erroneously discredited the opinion of Plaintiff's treating cardiologist, and ignored the corroborating opinion of the consulting neurologist. And, the RFC determination is in error, since it does not consider Plaintiff's inability to stoop.[28]

■ Secondly, the ALJ accepted Dr. Khan's opinion that Plaintiff's fatigue is

24. *Reid v. Chater,* 71 F.3d 372, 374 (10th Cir.1995).

25. *Talbot v. Heckler,* 814 F.2d 1456, 1463 (10th Cir.1987).

26. *Bean v. Chater,* 77 F.3d 1210, 1214 (10th Cir.1995)(quotation omitted, emphasis added); *see also* SSR 96-2p (stating that where a treating physician's medical opinion is well-supported and not inconsistent with the other substantial evidence in the case record, it must be given controlling weight); *see also Hintz v. Chater,* 913 F.Supp. 1486, 1492 (D.Kan.1996) (noting that treating physicians should be given greater weight than consultative and non-examining physicians).

27. 20 C.F.R. § 404.1527(d)(1–6).

28. SSR 96-9p dictates that the complete inability to stoop would significantly erode the unskilled sedentary occupational base and a

not persistent or severe, nor a side effect of his medication, nor a justification for the daily afternoon naps Plaintiff claims to need. The ALJ further accepted Dr. Khan's opinion that there is no basis in the record supporting Plaintiff's complaints of shortness of breath.

Both of these opinions by Dr. Khan materially affect the RFC. If Plaintiff truly needs to take daily hour long naps in the afternoon, this would greatly diminish the jobs available to him in the national economy. And, it would also materially affect Plaintiff's RFC if he truly experiences shortness of breath upon exertion.

Because the treating physicians and consulting physicians provided no opinion about Plaintiff's shortness of breath and fatigue, the ALJ did not necessarily err in accepting Dr. Khan's opinions. But, the ALJ is required to evaluate, discuss and explain the weight assigned to such a reviewing physician.[29] The opinion of a medical advisor, such as Dr. Khan, is only substantial evidence if it is supported by other evidence in the record or when it is consistent with the other evidence.[30] In evaluating the weight to be given to a non-examining source, the ALJ should evaluate the degree to which these opinions consider all of the pertinent evidence in a claim, including opinions of treating and other examining sources.[31]

Dr. Khan's opinion about Plaintiff's fatigue and shortness of breath is not supported by substantial evidence.[32] First, there is another medical opinion that contradicts Dr. Khan's opinion. Dr. Emil Goering, a state agency doctor who, like Dr. Khan, reviewed the records, opined that Plaintiff's complaints were fully credible and supported by his diagnosis of congenital heart disease. While the ALJ was not bound by Dr. Goering's opinion, he should have explained why he discounted Dr. Goering's opinion.[33]

Secondly, there is other evidence in the record that supports Plaintiff's claims of fatigue and shortness of breath. There are a number of instances in the record where Plaintiff presented to his treating physicians with contemporaneous complaints of fatigue and shortness of breath. Dr. Khan's opinion is neither supported nor consistent with this other evidence.

 Despite accepting Plaintiff's ambiguous testimony about his ability to stoop, it is evident that the ALJ found Plaintiff's complaints not credible. The ALJ is in the best position to observe and assess witness credibility.[34] Thus, the

finding that the individual is disabled would usually apply.

29. *Johnson–Winborn v. Apfel,* 106 F.Supp.2d 1144, 1147 (D.Kan.2000) (holding that "SSR 96–6p requires an ALJ to treat the fact findings of a state agency reviewing physician as non-examining expert opinion. Although the opinions do not have to be accepted by the ALJ, the ALJ cannot simply ignore them"); *See Ridge v. Apfel,* 15 F.Supp.2d 1086, 1089 (D.Kan.1998) (noting that in the decision the ALJ should evaluate, discuss and explain the findings of nonexamining state agency consultant's opinions and the weight given to these findings.) *See also* SSR 96–6p.

30. *Andrews v. Shalala,* 53 F.3d 1035, 1041 (9th Cir.1995).

31. *Id.*

32. *See* 20 C.F.R. §§ 404.1527, 416.927 (noting that because non-examining sources do not have an examining or treating relationship with the claimant, the weight accorded to their opinions depends upon the degree to which they provide supporting explanations for their opinions).

33. *See Footnote 29.*

34. *Adams v. Chater,* 93 F.3d 712, 715 (10th Cir.1996) (quoting *Casias v. Secretary of Health & Human Servs.,* 933 F.2d 799, 801 (10th Cir.1991)).

Court gives great deference to an ALJ's conclusion regarding credibility.[35] The Court need not defer, however, when there is a conspicuous absence of credible evidence to support an ALJ's determination regarding credibility.[36] If the ALJ accepted Dr. Khan's opinion because the ALJ completely discredited Plaintiff's testimony about fatigue and shortness of breath, then the ALJ has failed to point to credible evidence that supports this determination. The ALJ has failed to explain why Plaintiff's complaints are not credible, in light of his contemporaneous complaints to his treating physicians referenced in the medical records, and in light of Plaintiff's history of heart and pulmonary disease.

Defendant argues that the ALJ's credibility determination is supported by Plaintiff's failure to comply with a prescribed diabetic regimen. Not only has the ALJ failed to identify evidence in the record that supports his determination that Plaintiff is not credible, the ALJ failed to employ the four-factor *Frey*[37] test employed in this Circuit for determinations of credibility that are based in whole or in part on a claimant's failure to comply with prescribed treatment or regimen. Citing *Qualls*,[38] Defendant argues that *Frey* dictates that the four-factor test is not applicable when noncompliance is merely a factor considered in the credibility analysis as opposed to a factor considered in the ultimate determination of whether there is a disability. But, Defendant's argument has been rejected by this Court.

In *Goodwin v. Barnhart*,[39] this Court held that Defendant's reading of *Qualls*, "overstates the holding and creates a conflict in Tenth Circuit case law."[40] The Tenth Circuit and this Court have repeatedly held that the same four factors that apply to failure to follow medical treatment as it relates to the ultimate issue of disability also applies as a credibility factor.[41]

In addition to giving undue weight to Dr. Khan's opinions about the discrete issues concerning ability to stoop, fatigue and shortness of breath, the ALJ gave undue weight to Dr. Khan's ultimate opinion, that Plaintiff is not disabled. The ALJ adopted the opinion of Dr.

35. *Campbell v. Bowen*, 822 F.2d 1518, 1522 (10th Cir.1987).

36. *See Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir.1992).

37. *Frey v. Bowen*, 816 F.2d 508 (10th Cir. 1987)

38. *See Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir.2000) (holding that consideration of the factors set forth in *Frey* was unnecessary where noncompliance was used only as a factor in the credibility analysis).

39. 195 F.Supp.2d 1293 (D.Kan.2002).

40. *Id.* at 1295. Nor can *Goodwin's* holding be limited to cases involving failure to follow a weight loss plan, as Defendant argues. *Goodwin* cites to a number of cases involving compliance with a variety of prescribed treatments, medications and regimens. *See, e.g.,* *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir.1993) (involving failure to take prescription pain medications for a herniated disk); *Ragland v. Shalala*, 992 F.2d 1056, 1059–60 (10th Cir.1993) ("The ALJ rejected plaintiff's assertions of disabling pain because she does not 'take any medication for pain relief on a regular basis,' has not 'sought any significant medical treatment within the past several years' "); *Gobin v. Apfel*, 1998 WL 684237, at *6 (D.Kan. Sept.15, 1998) (ALJ finding claimant not credible for, "not taking any medication to control pain"); *Walker v. Callahan*, 990 F.Supp. 1283, 1287 (D.Kan. 1997) (ALJ noting that "Walker seeks medical attention at the low-cost Marian Clinic"); *See also Piatt v. Barnhart*, 231 F.Supp.2d 1128 (D.Kan.2002) (upholding the Court's holding in *Goodwin* ).

41. *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir.1993); *Ragland v. Shalala*, 992 F.2d 1056, 1059–60 (10th Cir.1993); *Walker v. Callahan*, 990 F.Supp. 1283, 1287 (D.Kan.1997).

Khan that Plaintiff's RFC allows for a range of light and sedentary work; but Plaintiff's primary treating physician, Dr. Vernon, opined that Plaintiff is incapable of performing substantial gainful activity because of severe uncontrolled diabetes, retinopathy and heart problems. Dr. Johnson, the neurologist who examined Plaintiff, opined that Plaintiff cannot manage the stresses of a job while managing his very fragile blood sugars.

Defendant must show good cause for rejecting the evidence and opinion of a treating physician; and Defendant cannot disregard a treating physician's opinion that a claimant is disabled without giving legitimate and specific reasons for doing so.[42] Defendant may specifically and legitimately establish such good cause by showing that a treating physician's report "... is brief, conclusory and unsupported by medical evidence" or "not supported by specific findings."[43] But, the ALJ did not reject Dr. Vernon's opinion for that reason. Nor did the ALJ reject Dr. Vernon's opinion because it is inconsistent with other medical evidence. In fact, Dr. Johnson, the consulting neurologist, had an opinion consistent with Dr. Vernon's opinion.

Rather, the ALJ discounted Dr. Vernon's opinion because a later report of Dr. Vernon stated that Plaintiff's diabetes is poorly controlled due to his "up and down course in terms of compliance." From this, the ALJ concluded, without further discussion, "[c]onsequently, the undersigned finds it unreasonable to conclude that claimant is disabled when he has not been compliant with his diabetic regimen." Although Defendant now argues that the ALJ considered noncompliance only as a

factor in his evaluation of credibility, it is clear from the ALJ's ruling, that his conclusion of no disability was based in part on a determination that Plaintiff had not been compliant with a prescribed regimen. The ALJ erred by not applying the four-factor *Frey* test, which requires that he consider: "(1) whether the treatment at issue would restore claimant's ability to work; (2) whether the treatment was prescribed; (3) whether the treatment was refused; and, if so, (4) whether the refusal was without justifiable excuse."[44]

The ALJ considered the second and third factors, noting that Dr. Vernon had characterized Plaintiff as having an "up and down course of compliance" with a suggested diet. There were also references in the medical record about Plaintiff's continued episodic consumption of alcohol. Although the ALJ did not expressly discuss the fourth factor, there are certainly references in the record concerning the admonishment and counseling Plaintiff received from medical practitioners about his noncompliance. The ALJ should have discussed these references and evaluated whether there was any justifiable excuse for Plaintiff's periodic noncompliance.

More critically, the ALJ failed to discuss the first factor, whether Plaintiff's full compliance would have restored his ability to work. Not only did the ALJ fail to discuss this factor, he did not address evidence in the record suggesting that compliance may not have restored Plaintiff's ability to work. First, there was evidence in the record that Plaintiff did comply with his prescribed regimen, at times; but no

---

**42.** *See Goatcher v. United States Dep't of Health & Human Servs.,* 52 F.3d 288, 290 (10th Cir.1995) (citing *Frey v. Bowen,* 816 F.2d 508, 513 (10th Cir.1987)).

**43.** *Bernal v. Bowen,* 851 F.2d 297, 301 (10th Cir.1988); *Castellano v. Sec. of Health and*

*Human Servs.,* 26 F.3d 1027, 1029 (10th Cir. 1994).

**44.** *Frey v. Bowen,* 816 F.2d 508, 517 (10th Cir.1987) (citation omitted).

discussion concerning what effect if any this had on his impairments. Moreover, Dr. Vernon reported that Plaintiff was not a good candidate for intensive dietary management because that would not control his insulin need completely. The ALJ points to nothing in the record that indicates that Plaintiff's consistent compliance with his diabetic regimen would render him able to work.

■ For these reasons, the Court must reverse Defendant's decision. Plaintiff urges the Court to reverse and remand for an immediate award of benefits. This is appropriate relief when additional fact finding would serve no useful purpose.[45] But, remand is more appropriate when the administrative record has not been fully developed, or where the ALJ makes minimal findings that are not supported by adequate evaluation of the evidence in the record.[46] Here, the ALJ did not adequately evaluate and/or did not adequately explain his evaluation of the treating, consulting and reviewing physicians' opinions and reports; and in evaluating credibility and determining disability, did not employ the requisite tests in considering Plaintiff's periodic noncompliance with a prescribed diabetic regimen. Therefore, the Court finds that this action should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to conduct further proceedings as follows:

> Upon receiving the court's final order of remand, the Appeals Council of the Social Security Administration will remand this case and direct the ALJ to reassess the severity of Plaintiff's impairments, in accordance with the statute and regulations, including the evaluative procedure required for treating, examining and reviewing physician's opinions, the evaluative procedure required for considering

Plaintiff's noncompliance with a prescribed regimen, in the context of evaluating credibility and determining disability. The ALJ will further consider the records and opinion of Plaintiff's treating physicians, Drs. Vernon and Bellah, the consulting physician Dr. Johnson, and the reviewing physicians Drs. Khan and Goering. The ALJ will give specific reasons for the weight given to his resultant findings. The ALJ will reassess his conclusions about Plaintiff's credibility and the severity of Plaintiff's impairments, including considering whether there is good cause or justifiable excuse for Plaintiff's periodic non-compliance with prescribed treatment or medication; and whether full compliance would render Plaintiff able to return to work.

**IT IS SO ORDERED.**

45. *Sorenson v. Bowen,* 888 F.2d 706, 713 (10th Cir.1989) (citations and quotations omitted).

46. *See Taylor v. Callahan,* 969 F.Supp. 664, 673 (D.Kan.1997) (citations omitted).