**Cheryl D. MOSES, Plaintiff,**

v.

**Jo Anne B. BARNHART, Commissioner of Social Security, Defendant.**

**No. 03–4099–JAR.**

United States District Court, D. Kansas.

June 15, 2004.

Patrick H. Donahue, Midland Professional Associates, Lawrence, KS, for Plaintiff.

Tanya S. Wilson, Office of United States Attorney, Topeka, KS, for Defendant.

### MEMORANDUM & ORDER

ROBINSON, District Judge.

Plaintiff Cheryl D. Moses brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of Defendant Commissioner of Social Security's denial of her application for a period of disability and disability insurance benefits under Title II of the Social Security Act. According to plaintiff, defendant failed to properly assess plaintiff's credibility, failed to accord adequate weight to the opinion of her treating physician, and erred in finding plaintiff could perform her past relevant work. As explained in more detail below, the Court rejects each of plaintiff's arguments and affirms defendant's decision.

## I. Procedural Background

On January 25, 2001, plaintiff filed her application for a period of disability and disability insurance benefits, claiming disability since June 5, 1997, due to a herniated disk in her neck and emphysema. The application was denied both initially and upon reconsideration. At plaintiff's request, an administrative law judge (ALJ) held a hearing on October 1, 2002; plaintiff was present and waived her right to representation at the hearing. On November 29, 2002, the ALJ rendered a decision denying all benefits, on the basis that plaintiff was not under a "disability" as defined by the Social Security Act. After the ALJ's unfavorable decision, plaintiff requested review by the Appeals Council; her request for review was denied on March 25, 2003. Thus, the ALJ's decision is the final decision of defendant.

## II. Standard of Review

 Judicial review under 42 U.S.C. § 405(g) is limited to whether defendant's decision is supported by substantial evidence in the record as a whole and whether defendant applied the correct legal standards.[1] The Tenth Circuit has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[2] In the course of its review, the court may not reweigh the evidence or substitute its judgment for that of defendant.[3]

## III. Relevant Framework for Analyzing Claim of Disability and the ALJ's Findings

"Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment ...."[4] The Social Security Act further provides that an individual "shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy ...."[5]

The Social Security Administration has established a five-step sequential evaluation process for determining whether a claimant is disabled,[6] and the ALJ in this case followed the five-step process. If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary.[7] Step one determines whether the claimant is presently engaged in substantial gainful activity.[8] If she is, disability benefits are denied.[9] If she is not, the decision maker must proceed to the second step.[10] Here, the ALJ determined that plaintiff was not engaged in substantial gainful activity and, thus, properly proceeded to the second step.

The second step of the evaluation process involves a determination of whether "the claimant has a medically severe impairment or combination of impairments."[11] This determination is governed by certain "severity regulations," is based on medical factors alone, and consequently, does not include consideration of such vocational factors as age, education, and work experience.[12] Pursuant to the severity regulations, the claimant must make a threshold showing that her medically determinable impairment or combination of impairments significantly limits her ability to do basic work activities.[13] If the claim-

1. See White v. Massanari, 271 F.3d 1256, 1257 (10th Cir.2001) (citing Castellano v. Sec'y of Health & Human Services, 26 F.3d 1027, 1029 (10th Cir.1994)).

2. Id. (quoting Castellano, 26 F.3d at 1028).

3. Id.

4. Williams v. Bowen, 844 F.2d 748, 750 (10th Cir.1988) (quoting 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (1982)).

5. Id. (quoting 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B) (1982 & Supp. III 1985)).

6. See id. (citing 20 C.F.R. §§ 404.1520, 416.920 (1986)).

7. Id.

8. Id.

9. Id.

10. Id.

11. Id. (quoting Bowen v. Yuckert, 482 U.S. 137, 107 S.Ct. 2287, 2291, 96 L.Ed.2d 119 (1987)).

12. Id. (citing 20 C.F.R. §§ 404.1520(c), 416.920(c) (1986)).

13. Id. at 750–51 (citing 20 C.F.R. §§ 404.1521(b), 416.921(b) (1986)).

ant is unable to show that her impairments would have more than a minimal effect on her ability to do basic work activities, she is not eligible for disability benefits.[14] If, on the other hand, the claimant presents medical evidence and makes the de minimis showing of medical severity, the decision maker proceeds to step three.[15] The ALJ in this case concluded that plaintiff satisfied the severity requirement based on the following impairments: chronic obstructive pulmonary disease, degenerative disc disease of the lumbar spine, and low back pain. Thus, the ALJ proceeded to step three. However, the ALJ found that plaintiff did not have a mental impairment that met the severity requirement.

In step three, the ALJ "determines whether the impairment is equivalent to one of a number of listed impairments that the Secretary acknowledges are so severe as to preclude substantial gainful activity." [16] If the impairment is listed and thus conclusively presumed to be disabling, the claimant is entitled to benefits.[17] If not, the evaluation proceeds to the fourth step, where the claimant must show that the "impairment prevents [her] from performing work [she] has performed in the past." [18] If the claimant is able to perform her previous work, she is not disabled.[19] With respect to the third step of the process in this case, the ALJ determined that plaintiff's impairments were not listed or medically equivalent to those listed in the relevant regulations. At the fourth step,

the ALJ concluded that plaintiff was not disabled because she was able to perform her past relevant work as a receptionist.

The ALJ did not stop at step four, but proceeded to the fifth and final step of the sequential evaluation process-determining whether the claimant has the residual functional capacity (RFC) "to perform other work in the national economy in view of [her] age, education, and work experience." [20] An ALJ is allowed to make a step five determination even if he finds that plaintiff is not disabled at step four.[21] At this point, the ALJ properly shifted the burden of proof to defendant to establish that plaintiff retains the capacity "to perform an alternative work activity and that this specific type of job exists in the national economy." [22] At this step, the ALJ also concluded that plaintiff was not disabled, a conclusion that rested on a finding that plaintiff, despite possessing certain non-exertional limitations, nonetheless could perform a significant number of jobs in the state and national economies, including sedentary cashier, security monitor, and phone solicitor.

## IV. Analysis of Plaintiff's Specific Arguments

In her motion, plaintiff contends that the ALJ made three errors in reaching his decision: defendant failed to accord adequate weight to the opinion of plaintiff's treating physician, failed to properly as-

---

14. *Id.* at 751.

15. *Id.*

16. *Id.* (citing 20 C.F.R. §§ 404.1520(d), 416.920(d) (1986); *Bowen v. Yuckert,* 107 S.Ct. at 2291).

17. *Id.*

18. *Id.* (citing 20 C.F.R. §§ 404.1520(e), 416.920(e) (1986); *Bowen v. Yuckert,* 107 S.Ct. at 2291).

19. *Id.*

20. *See id.*(quoting *Bowen v. Yuckert,* 107 S.Ct. at 2291).

21. *Murrell v. Shalala,* 43 F.3d 1388 (10th Cir.1994).

22. *See Williams,* 844 F.2d at 751 (citations omitted); *accord White,* 271 F.3d at 1258 (at fifth step, burden of proof shifts to Commissioner to show that claimant retains the functional capacity to do specific jobs).

sess plaintiff's credibility, and erred in finding plaintiff could perform her past relevant work. The Court addresses each of these arguments in turn.

## A. *Physicians' Opinions*

 Plaintiff argues that the ALJ should have given controlling weight to the opinion of Dr. Martin, who plaintiff claims is her treating physician. According to the Tenth Circuit, a treating source's opinion is not dispositive on the ultimate issue of disability,[23] but the ALJ must give the most weight to a treating source's opinion. Opinions of physicians who have examined the claimant are given less weight than the treating physician's opinion, and opinions of physicians who merely review the claimant's records are to be given the least amount of weight.[24] In addition, the ALJ must consider specific factors when deciding the weight to give any physician's opinion, including the length of the treatment relationship, the frequency of examination, and the extent to which the opinion is supported by objective medical evidence.[25] In short, the ALJ cannot disregard a treating source's opinion that a claimant is disabled without giving legitimate and specific reasons for doing so.[26]

 In his written decision, the ALJ discussed the opinions of Dr. Veenis, who examined plaintiff in October 1996; Dr. Perkins, who examined plaintiff on March 10, 2001; and Dr. Martin, who examined plaintiff on August 20, 2002, after a referral by Dr. Smith. Although the ALJ discusses Dr. Martin's findings, he attributes them to Dr. Smith. However, this mistake in attribution has no bearing on the validi-

ty of the weight the ALJ gave to Dr. Martin's opinion.

Dr. Martin was not plaintiff's treating physician. Treating physicians are defined in 20 C.F.R. § 416.902, as "your own physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you." Plaintiff was only examined by Dr. Martin on one occasion, so he is not a treating physician and his opinion does not deserve "controlling weight." The ALJ rejected Dr. Martin's diagnosis of fibromyalgia because there was no objective evidence of fibromyalgia beyond Dr. Martin's examination, although there was evidence that plaintiff had some limitation. None of the physicians, including Dr. Martin, found any limitations beyond those reflected in the RFC assessment. Furthermore, the mere fact that plaintiff has been diagnosed with fibromyalgia does not mean she is disabled,[27] and Dr. Martin never opined that plaintiff's fibromyalgia caused limitations in her ability to work.

Plaintiff further argues that Dr. Martin's opinion should be given more weight than Dr. Perkins's opinion because Dr. Martin examined plaintiff in 2002, after Dr. Perkins examined plaintiff in 2001. Because plaintiff claims disability since 1997, an examination performed in 2001 is as relevant as one performed in 2002. Plaintiff also argues Dr. Perkins's opinion should be given less weight because he was hired by the State to defend against plaintiff's claim. But Dr. Perkins's medi-

**23.** *Castellano v. Sec'y of Health & Human Services,* 26 F.3d 1027, 1029 (10th Cir.1994)(citing 20 C.F.R. §§ 404.1527(e)(2), 416.927(d)(2)).

**24.** *Talbot v. Heckler,* 814 F.2d 1456, 1463 (10th Cir.1987).

**25.** *Goatcher v. U.S. Dep't of Health & Human Servs.,* 52 F.3d 288, 290 (10th Cir.1995).

**26.** *See id.* (citing *Frey v. Bowen,* 816 F.2d 508, 513 (10th Cir.1987)).

**27.** *See Sarchet v. Chater,* 78 F.3d 305, 307 (7th Cir.1996).

cal assessment appears unbiased and based on the evidence collected from plaintiff's medical record and an examination of plaintiff. In short, the ALJ gave correct weight to the physician's opinions and stated sufficient reasons for his evaluation of the opinions.

## B. Assessment of Plaintiff's Credibility

 Plaintiff asserts that the ALJ erred in failing to properly assess her credibility in accordance with the Tenth Circuit's opinion in *Luna v. Bowen*.[28] Under *Luna*, the ALJ must decide whether a claimant's subjective complaints are credible, considering all the evidence presented, including medical data, objective indications of the degree of symptoms, and subjective accounts of severity of symptoms by the claimant.[29] The ALJ must also consider such factors as a claimant's persistent attempts to find relief and her willingness to try any treatment prescribed; regular contact with a doctor; the claimant's daily activities; the dosage, effectiveness, and side effects of medication, and subjective measures of credibility that are peculiarly within the judgment of the ALJ.[30] Moreover, the ALJ must give specific reasons why he rejects a claimant's subjective complaints.[31] Ultimately, credibility determinations "are peculiarly the province of the finder of fact," and should not be upset if supported by substantial evidence.[32]

 A review of the ALJ's decision in this case reveals that he complied with *Luna* in assessing plaintiff's credibility. In that regard, the ALJ concluded that plaintiff was "limited in her activities, but not completely disabled," and he found her only "partially credible." The ALJ's assessment was based on specific factors including the medical evidence, the opinions of the examining physicians, the fact that plaintiff continues to smoke and does not take all her prescribed medication, and plaintiff's sporadic work and treatment histories. Plaintiff has not shown how the ALJ's assessment lacked substantial evidence.

While not all of the factors the ALJ relied on for his credibility determination were persuasive, the findings that were persuasive amounted to substantial evidence to support his decision. In *Kepler v. Chater* the Tenth Circuit stated, "[c]redibility determinations are peculiarly the province of the finder of fact, and [the court] will not upset such determinations when supported by substantial evidence."[33] Furthermore, "*Kepler* does not require a formalistic factor-by-factor recitation of the evidence. So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the dictates of *Kepler* are satisfied."[34] Therefore, even though the ALJ did not make a finding regarding each of the *Luna* factors, his credibility determination must be upheld because he linked his findings to substantial evidence in the record.[35]

The main *Luna* factor the ALJ relied on was the medical evidence and the opinions

**28.** 834 F.2d 161 (10th Cir.1987).

**29.** *Id.* at 163.

**30.** *Barnett v. Apfel,* 231 F.3d 687, 690 (10th Cir.2000) (citing *Luna,* 834 F.2d at 165–66); *Huston v. Bowen,* 838 F.2d 1125, 1132 (10th Cir.1988).

**31.** *White,* 271 F.3d at 1261 (citing *Kepler v. Chater,* 68 F.3d 387, 390–91 (10th Cir.1995)).

**32.** *Id.* (citing *Kepler,* 68 F.3d at 390–91).

**33.** *Kepler,* 68 F.3d at 391 (quotation omitted).

**34.** *White v. Barnhart,* 287 F.3d 903, 909 (10th Cir.2001) (quoting *Qualls v. Apfel,* 206 F.3d 1368, 1372 (10th Cir.2000)).

**35.** *Winfrey v. Chater,* 92 F.3d 1017, 1020 (10th Cir.1996) (quoting *Huston,* 838 F.2d at 1133).

of the consulting physicians. The ALJ noted that none of the physicians in the record stated that plaintiff's condition is completely disabling. In fact, none of the physicians placed any limitations on plaintiff beyond her RFC determination. This is not, as plaintiff argues, an improper reliance by the ALJ on lack of evidence. The ALJ has relied on the evidence the examining physicians provided in finding that plaintiff did not have any disabling condition.

Furthermore, the ALJ did find plaintiff's allegations partially credible. Plaintiff's testimony was partially corroborated by the findings of the examining physicians who determined that plaintiff could only lift 20 pounds occasionally and 10 pounds frequently. The ALJ also accepted plaintiff's statement that she could only sit and stand for 30 minutes at a time, thus determining that plaintiff's RFC required a sit/stand option, which is more restrictive than the State agency physician's limitation.

■ The ALJ also noted that plaintiff's sporadic work history and treatment history weigh against her allegations of total disability. Frequency of medical contacts is an appropriate factor in determining plaintiff's credibility.[36] A review of the record shows that plaintiff has received very little treatment for problems with her back since her alleged onset date of June 5, 1997. A treatment note from October 5, 1999, shows that plaintiff complained of lower back pain; however, plaintiff was not prescribed any pain medication at that time. Plaintiff's work history also weighs against her credibility because her onset date was determined as of the date she left her last employer, and she states that she was laid off from her last job. Courts have found significant, that a claimant leaves her job for a reason other than her disabling condition.[37] This evidence alone was substantial evidence for the ALJ's determination that plaintiff was not completely credible.

Plaintiff argues that the ALJ erred by relying on the fact that plaintiff does not use all her prescription medication when the ALJ decided "although [plaintiff] indicates that she cannot use all her medicine, the record reflects that [her] condition is made more manageable with medication...." Plaintiff argues that the ALJ should have followed the four factor test required when relying on plaintiff's failure to follow prescribed treatment, which is set out by the Tenth Circuit in *Frey v. Bowen.*[38] However, it is unclear whether the ALJ was relying on plaintiff's failure to follow prescribed treatment, or whether he was simply commenting on plaintiff's claimed side effects from her medication. During the hearing, when asked why she was unable to work at that time plaintiff made the following statement:

> Well, mainly the lifting, the sitting for long periods of time, standing for long periods of time. The medication to do that makes me-I'd be like a jellyfish if I took them-all the medication to relieve the pain in the back, neck, and hips.

Later during the hearing, plaintiff stated that she did not have side effects from her medication except for one that "knocks you out," so she only takes it at night. She

---

**36.** *Hargis v. Sullivan,* 945 F.2d 1482, 1489 (10th Cir.1991).

**37.** *See Pugh v. Sec'y of Health, Educ. and Welfare,* 448 F.Supp. 37, 41 (D.Kan.1978) (court found it important that plaintiff left his job because it was not lucrative); *Johnson v. Apfel,* 240 F.3d 1145, 1147 (8th Cir.2001) (plaintiff left his job because the position was eliminated); *Black v. Apfel,* 143 F.3d 383, 387 (8th Cir.1998) (it was important to plaintiff's work history that she was laid off from work rather than forced out due to her condition).

**38.** 816 F.2d 508, 517 (10th Cir.1987).

also stated that her pain medication helps. Based on these conflicting statements by plaintiff, it was not improper for the ALJ to determine that even though she says taking all her medication makes her feel "like a jellyfish," she also stated that taking her medication helps her and she has no side effects.

 To be sure, the ALJ relied on other evidence that was not as persuasive. The ALJ relied on plaintiff's inability to quit smoking as a factor in determining that she was not fully credible, noting that plaintiff continued smoking even though she knew smoking "lessens her ability to perform certain activities." The ALJ did not identify the evidentiary basis for this finding; moreover, it is improper for the ALJ to rely on the claimant's failure to follow a doctor's order to quit smoking, unless the ALJ follows the mandates of 20 C.F.R. § 404.1530.[39] This regulation requires an analysis much like the Tenth Circuit's *Frey* test, requiring the ALJ to make a finding that plaintiff could return to work if she followed the prescribed treatment of quitting smoking.[40] The ALJ erred in relying on this factor when he failed to identify any evidence that smoking actually lessens her ability to do activities, or that quitting would enable her to perform activities she could not perform while continuing to smoke.

Nevertheless, overall the ALJ considered the entire record, set forth specific evidence he relied upon, and based his determination on substantial evidence in the record as required. Because credibility determinations are ultimately left to the ALJ when he has substantial evidence, the

Court finds that the ALJ's decision regarding plaintiff's credibility is not erroneous.

## C. ALJ's Step Four Analysis

 Plaintiff's final argument is that the ALJ did not apply the correct legal standards when he determined that plaintiff could return to her past relevant work. At step four of the sequential evaluation process, the ALJ must complete the following three phases:

> In the first phase, the ALJ must evaluate a claimant's physical and mental residual functional capacity (RFC), and in the second phase, he must determine the physical and mental demands of the claimant's past relevant work. In the final phase, the ALJ determines whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one. At each of these phases, the ALJ must make specific findings.[41]

Plaintiff argues that the ALJ erred in determining her RFC in reliance on the vocational expert's (VE) testimony without making specific and detailed findings regarding her RFC.

However, the ALJ made a specific finding in the first phase, regarding plaintiff's physical RFC, setting out what he determined plaintiff's physical limitations were. But plaintiff argues that the ALJ failed to properly evaluate her mental impairments during this evaluation, failing to fill out a Psychiatric Review Technique Form (PRTF). But the ALJ is no longer required to fill out a PRTF as long as he discusses the psychiatric review technique criteria in his decision.[42] In this case, the

---

**39.** *See Rousey v. Heckler,* 771 F.2d 1065, 1069 (7th Cir.1985); *Shramek v. Apfel,* 226 F.3d 809 (7th Cir.2000).

**40.** *Frey,* 816 F.2d at 517.

**41.** *Winfrey v. Chater,* 92 F.3d 1017, 1023 (10th Cir.1996).

**42.** Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed.Reg. 50, 746, 50, 757–58 (2000) (to be codified at 20 C.F.R. 404 and 416) ("[R]equiring that a PRTF be appended to an administrative law judge or Appeals Council decision would only repeat information already

ALJ properly discussed the elements of the psychiatric review technique, and his determination led to the conclusion that plaintiff did not have a severe mental impairment.[43]

While it is true that the ALJ must consider even non-severe impairments when determining RFC,[44] in this case the ALJ expressly stated that plaintiff's claimed mental impairment did not place any restrictions on her ability to do work related activities. There are no records that show plaintiff was ever diagnosed with depression, and the only evidence plaintiff can point to is a consultative examination where the examining physician merely relied on plaintiff's own statement that she had a history of depression. At the time of the ALJ hearing, plaintiff had been taking an anti-depressant medication for merely six days. Thus, there was substantial evidence for the ALJ's determination that plaintiff did not have a severe mental impairment.

At phases two and three, plaintiff argues, the ALJ relied on the vocational expert (VE)'s testimony rather than making independent findings. As the Tenth Circuit noted in *Doyal*, it is proper for the ALJ to rely on testimony from the VE as evidence when making his findings at phases two and three,[45] where:

> The ALJ did not delegate the analysis to the vocational expert; instead, he quoted the VE's testimony approvingly, in support of his own findings at phases

two and three of the analysis. There was nothing improper about this. An "ALJ may rely on information supplied by the VE at step four."[46]

In this case, like in *Doyal*, the ALJ quoted the VE's testimony about the exertional levels of plaintiff's past relevant work. He then determined that based on the exertional levels quoted by the VE and his determination of plaintiff's RFC, plaintiff could return to her past relevant work as a receptionist. Plaintiff has not shown how this assessment was in error.

In sum, after carefully reviewing the record in this case and considering all of plaintiff's arguments in light of the record, the Court concludes that substantial evidence supports defendant's decision to deny plaintiff's application for disability benefits and that no deviation from established legal standards occurred.

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiff's motion for judgment is denied and defendant's decision denying plaintiff disability benefits is affirmed.

**IT IS SO ORDERED.**

---

required in the decision under these final rules, and renders the PRTF redundant.").

**43.** *See* 20 C.F.R. § 404.1520a(d)(1) (if the ALJ rates plaintiff's mental impairment as "none" in each area of the technique, the ALJ may generally conclude that the impairment is not severe).

**44.** *See* 20 C.F.R. § 404.1545(a), (e); *Spicer v. Barnhart*, No. 02–5072, 64 Fed.Appx. 173, 175, 2003 WL 21000999, *2 (10th Cir.2003).

**45.** *Doyal v. Barnhart*, 331 F.3d 758, 761(10th Cir.2003); *Gibson v. Barnhart*, No. 02–6337, 69 Fed.Appx. 983, 985, 2003 WL 21702496, *3 (10th Cir.2003).

**46.** *Doyal*, 331 F.3d at 761 (quoting *Winfrey*, 92 F.3d at 1025).